COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Bumgardner and Retired Judge Stephens*
Argued at Richmond, Virginia


SHAWN DELANO GREGORY

                                                          OPINION BY
v.        Record No. 0280-04-2          JUDGE RUDOLPH BUMGARDNER, III
                                                      NOVEMBER 1, 2005

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                          George F. Tidey, Judge

          Roger D. Groot (Carl C. Muzi, on briefs), for appellant.

          Paul C. Galanides, Assistant Attorney General (Judith Williams
          Jagdmann, Attorney General, on brief), for appellee.


       Shawn Delano Gregory was indicted for capital murder, the lesser degrees of murder,

abduction, felony eluding police, and three counts of possession with intent to distribute an

illegal drug.  The drug charges were set for trial after the homicide trial.  A jury convicted the

defendant of second-degree murder and felony eluding police and sentenced him to 40 years in

prison, which the trial court imposed.  The defendant then entered a conditional plea of guilty to

the drug charges, and the trial court imposed an additional sentence of 32 years with 16 years

suspended in accordance with a plea agreement.

       Before the homicide trial, the defendant filed a motion to suppress from both trials the

evidence recovered during a search of his apartment and a motion *in limine* to exclude evidence

of drugs and unadjudicated bad acts from the homicide trial.  The trial court denied both motions.

After the homicide trial, the defendant renewed his motion to suppress.  When the trial court

─────────────

       * Retired Judge J. Warren Stephens took part in the consideration of this case by
designation pursuant to Code § 17.1-400(C).

denied it, he entered a conditional plea of guilty and preserved his right to appeal that ruling. The cases were consolidated for appeal.

We granted an appeal on two of the issues raised by the defendant in his petition for appeal. As phrased by the defendant the issues were: did the search warrants obtained by the Commonwealth so lack an indicia of probable cause as to render official belief in its existence unreasonable[1] and violate his Constitutional rights against illegal search and seizure; and did the trial court err in not prohibiting the Commonwealth from introducing into the murder trial the evidence seized from his residence. We hold the trial court did not err in denying the motions and affirm.

At 2:23 a.m. January 29, 2003, Trooper Michael Blanton stopped a BMW at the Gaskins Road exit ramp for speeding on Interstate 64. A video camera mounted in the trooper's vehicle and a microphone on his person recorded the events. The trooper obtained the driver's operator's license and vehicle registration. When the trooper began conducting field sobriety tests, the driver began to get back in his car. The trooper jumped inside the car to keep the defendant from putting it in gear. The car accelerated rapidly while the trooper struggled with the driver. After traveling about 100 yards, the car left the road, rolled over several times, and landed on the trooper killing him.

At 2:37 a.m. Henrico police officers came upon the wrecked BMW. They saw no one near it, but a passerby reported a male running from the scene. Two officers apprehended the defendant not far from the wreck. He had a broken arm and other injuries. The officers arrested

---

[1] The language employed raises the issue of whether the good faith exception to the warrant requirement is applicable in this case. See United States v. Leon, 468 U.S. 897, 916 (1984). However, the record does not indicate the trial court ever found the affidavit failed to establish probable cause. To the extent the defendant argues the good faith exception does not apply, we do not address the issue because we conclude the magistrate had a sufficient basis to find probable cause.

the defendant and took him to the Medical College of Virginia hospital. The defendant refused to give his name to the officers or the hospital staff and refused to sign the hospital forms. He said he had been in an automobile accident but never admitted driving and denied hitting a police officer.

The police found the defendant's operator's license and vehicle registration at the scene. They used the photograph on the license to confirm that the man taken to the hospital was the defendant. From the videotape in the trooper's vehicle, the police heard the defendant tell the trooper he worked for A&W Auto Sales, which owned the BMW. They contacted the owner of that company, who denied both claims.

Police then determined that the independent dealer license plates displayed on the BMW were the proper plates for the vehicle. They were registered to Quick Enterprises, LLC, and the vehicle had not been reported stolen. The Department of Motor Vehicles records divulged Quick Enterprises, LLC was a licensed corporation with its registered office on Chamberlayne Avenue, and the State Corporation Commission listed the defendant as its registered agent. The police went to the address and spoke to the owner of the building. He reported that the defendant operated Quick Enterprises, had inquired about renting office space, but had not rented from him.[2]

A computer data search revealed that the defendant rented an apartment at 4206 Whitford Court #1608.[3] The apartment was one mile from the crime scene and in the direction the defendant was headed when arrested. Officers obtained his current rental contract and verified

---

[2] The owner, who was an accountant, later told police that he had filed corporate forms for Quick Enterprises with the corporation commission.

[3] The operator's license listed the defendant's address as 1524 Clarkson Road, Apt. D, Richmond, VA.

with the manager that the defendant was a current resident. The maintenance man for the complex told police he had seen the defendant and the BMW at the apartment.

The next day at 5:36 p.m., state police applied for a warrant to search the Whitford Court apartment. The affidavit recited the facts of the traffic stop, the trooper's death, the defendant's arrest, and his identification. The application requested a warrant to search the apartment to "connect Shawn D. Gregory to the BMW sedan with license plate JCG-8714." Specifically, it sought "all papers, documents, titles, or photographs showing usage or ownership of this BMW."[4]

The magistrate issued the search warrant, and police began executing it that evening. During the initial search, they observed drugs. The police then obtained an additional warrant permitting a search of the apartment for drugs and contraband.[5] During execution of the second warrant, they seized $600,000 worth of heroin, cocaine, and marijuana as well as $125,207 in cash.

The defendant's motion to suppress raised three issues: the warrant lacked probable cause because the affiant had no basis to know that documents existed or would be found in the apartment; the warrant lacked the requisite particularity necessary to obtain a warrant; and the execution of the warrant exceeded its permissive scope. At the suppression hearing,[6] the

---

[4] The affidavit did not address the officers' efforts to determine the defendant's connection to Quick Enterprises or the false statements he made regarding A&W Auto Sales' ownership of the BMW.

[5] The police also obtained search warrants for the BMW, the Chamberlayne Avenue address of Quick Enterprises, and the Clarkson Road apartment listed on the defendant's operator's license.

[6] The defendant moved to suppress the evidence prior to his murder trial. The trial court denied the motion, and he was convicted of second-degree murder. He renewed the suppression motion prior to his trial for the drug offenses. Only the transcript of the second suppression hearing is a part of the record on appeal. We assume, for purposes of this appeal only, that the

defendant argued that the affidavit lacked probable cause. He argued the ownership of the BMW was irrelevant and the officers were on a fishing expedition to find evidence of other crimes in retaliation for the trooper's death. The defendant maintained that nothing linked the vehicle to any criminal activity and nothing indicated criminal activity would be discovered in the apartment.

The crucial question in determining whether a search warrant is supported by probable cause is whether the item to be seized is likely to be found in the place to be searched. United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993). When reviewing a magistrate's determination of probable cause, we presume he properly performed his duties. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). We review the affidavit in a common sense manner, not in a hypertechnical fashion. Id. We only consider whether the magistrate had a "'substantial basis . . . for concluding' that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (citation omitted).

The defendant concedes that the facts in the affidavit were credible, that the apartment searched was in fact his residence, and that the magistrate was justified in concluding that he had committed several crimes. He claims, however, that the affidavit failed to state with requisite particularity that documents connecting him to the BMW existed or would be found at his residence.

The magistrate is free "to draw reasonable inferences about where incriminating evidence is likely to be found, based on the nature of the evidence and the type of offense." Gwinn v. Commonwealth, 16 Va. App. 972, 975, 434 S.E.2d 901, 904 (1993) (drugs likely to be kept in residence). "Indeed . . . a sufficient nexus can exist between a defendant's criminal conduct and

defendant made the same arguments at the second suppression hearing that he made at the first one.

his residence even when the affidavit supporting the warrant 'contains no factual assertions directly linking the items sought to the defendant's residence.'" United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (each of three search warrants established probable cause to believe drugs would be found at different locations and fact that defendant did not reside there did not invalidate that finding) (citation omitted). In determining whether the affidavit provides a sufficient nexus, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988).

In Anderson, the court upheld a search warrant for the defendant's residence though the affidavit did not link the firearm to the residence. The opinion relied on United States v. Jacobs, 715 F.2d 1343, 1346 (9th Cir. 1983) (reasonable for magistrate to conclude clothing would remain at the residence); United States v. Steeves, 525 F.2d 33, 38 (8th Cir. 1975) (gun owners generally keep them at home or on their persons); United States v. Rahn, 511 F.2d 290, 293 (10th Cir. 1975) (reasonable to assume weapons kept in residences); and Bastida v. Henderson, 487 F.2d 860, 863 (5th Cir. 1973) ("[a] very likely place to find [pistols] would either be on the persons of the assailants or about the premises where they lived").

The Fourth Circuit Court of Appeals has consistently held that to establish probable cause the magistrate must "review facts and circumstances as a whole and make a common sense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (quoting Gates, 462 U.S. at 238). The facts and circumstances in the affidavit only need to permit a person of reasonable caution to believe the articles sought would be found there. The appellate review of the magistrate's decision is to determine whether there is a "substantial basis" for the conclusion that probable cause exited. Simmons v. Poe, 47 F.3d 1370, 1379 (4th

Cir. 1995). The facts presented to the magistrate need not provide certainty that the objects sought will be found but need only establish a reasonable belief that evidence of the crime will be found in the place to be searched. See United States v. Humphrey, 104 F.3d 65, 69 (5th Cir. 1997).

In this case, the magistrate could reasonably conclude that documents relating to ownership or use of a car existed and would be kept with other personal papers in one's residence. The defendant and the BMW were associated with the apartment. Documents related to the ownership and use of such a vehicle are just the type of things people tend to keep in their homes among their papers and personal effects. "Passports, personal identification, and bank records are precisely the sorts of items which people tend to keep at home among their personal papers and effects." United States v. Freeman, 685 F.2d 942, 949 (5th Cir. 1982). The magistrate could reasonably infer the defendant would keep records about the car he drove in the apartment where he lived.

The defendant relies on Anzualda v. Commonwealth, 44 Va. App. 764, 607 S.E.2d 749 (2005) (*en banc*). In Anzualda, police sought a pistol used in a murder and received information that the perpetrator traded the pistol to Anzualda in exchange for marijuana. The police then obtained and executed a search warrant for Anzualda's residence.

The majority held the magistrate lacked a substantial basis for concluding that a firearm would be found in the defendant's residence. Id. at 776-77, 607 S.E.2d at 755 (Humphreys, J., joined by Clements, and Felton, JJ., and Annunziata, S.J.); id. at 790, 607 S.E.2d at 762 (Benton, J., joined by Fitzpatrick, C.J., and Elder and Frank, JJ., dissenting); see also id. at 777-78, 607 S.E.2d at 755-56 (Humphreys, J., joined by Clements and Felton, JJ., and Annunziata, S.J.) (holding that, despite lack of substantial basis, good faith exception applied and evidence was admissible); id. at 788-90, 607 S.E.2d at 761-62 (Kelsey, J., joined by Bumgardner, J.,

concurring in result) (dissenting from decision regarding substantial basis based on belief that issue need not be addressed because, assuming without deciding that no substantial basis existed, good faith exception applied and evidence was admissible).  It held the affidavit's failure to provide any "temporal context" prevented the magistrate from drawing an inference that the defendant had the pistol.  Id. at 776-77, 607 S.E.2d at 755 (Humphreys, J., joined by Clements, and Felton, JJ., and Annunziata, S.J.); id. at 790, 607 S.E.2d at 762 (Benton, J., joined by Fitzpatrick, C.J., and Elder and Frank, JJ., dissenting).  It also held the affidavit did not contain "any facts" to support an inference "that [the defendant] was keeping that pistol at his home." Id. at 777-78, 607 S.E.2d at 755-56 (Humphreys, J., joined by Clements, and Felton, JJ., and Annunziata, S.J.); id. at 790, 607 S.E.2d at 762 (Benton, J., joined by Fitzpatrick, C.J., and Elder and Frank, JJ., dissenting).  The affidavit indicated the murder had occurred six months earlier, but did not indicate when the defendant acquired the pistol, whether he was aware of the fact that it had been used in a murder, or whether the pistol had been observed in the defendant's home or the defendant's possession after he acquired it.

In this case, by contrast, evidence recited in the affidavit indicated the BMW to which police sought to connect the defendant had been in his possession at the time of the offense. Further, the police sought not the car itself but documents showing ownership or possession of the car in order to strengthen their circumstantial case that the defendant was driving the vehicle when it flipped and killed the trooper.  Finally, the defendant remained in police custody and had no opportunity to remove such documents from his residence.  Thus, the magistrate was entitled to draw the reasonable inference that the defendant's residence was likely to contain documents showing his ownership or possession of the vehicle--such as a title, loan documents, or repair invoices.

On appeal, the defendant maintains that the warrant was obtained in violation of Franks v. Delaware, 438 U.S. 154 (1978). To obtain suppression of the fruits of a search under Franks, a defendant must establish that the affidavit supporting the search warrant contained a deliberate falsehood or omission that was made with reckless disregard for the truth, that the falsehood or omission was made by a police officer, and that the falsehood or omission negated the basis upon which the probable cause determination was made. Ronald J. Bacigal, Criminal Procedure § 4.5, at 91 (2004); see also John L. Costello, Virginia Criminal Law and Procedure § 41.2-3, at 543 (3d ed. 2002). Upon such a showing, the defendant is entitled to a hearing to determine whether probable cause was based on "intentionally incorrect information." United States v. Akinkoye, 185 F.3d 192, 199 (4th Cir. 1999).

The defendant contends on appeal that the officer's failure to advise the magistrate that the defendant had two addresses is a material, intentional omission that renders the warrant invalid. The defendant contends that the omission affected the magistrate's determination of probable cause that the items would be found at the place to be searched. The record on appeal contains no indication that the defendant ever requested a Franks hearing before the trial court, and the defendant does not contend otherwise. As such, he failed to properly preserve this issue for appeal. Rule 5A:18. Even if appellant had preserved this issue for appeal or if the good cause or the ends of justice exceptions to Rule 5A:18 excused that failure, the defendant failed to raise this issue in his petition for appeal. He contended therein only that the warrants themselves were so lacking in indicia of probable cause as to render official belief in the existence of probable cause under the warrants unreasonable. Thus, no appeal was granted on this issue, and Rule 5A:12(c) prevents us from considering it. See also Thompson v. Commonwealth, 27 Va. App. 620, 626, 500 S.E.2d 823, 826 (1998) (noting that Rule 5A:12, unlike Rule 5A:18, contains no "good cause" or "ends of justice" exception).

- 9 -

In his motion *in limine* and his petition for appeal, the defendant objected to the use of evidence of drugs and bad acts on the grounds that they could not be considered as evidence of intent. The trial court denied the motion but provided the matter "can be reconsidered when the evidence is presented at trial."[7] On appeal, the defendant changed his objection and argues the only function of the evidence was "to explain the source of and/or amplify [the defendant's] motive to escape," which was clearly established by the videotape.[8] The Commonwealth argues the defendant is precluded from raising this issue on appeal because he did not raise this particular issue in his motion *in limine*.

We need not address the issues of default because the evidence at trial developed differently than anticipated during the pretrial hearing of the motion *in limine*. Unanticipated testimony provided a different basis for admitting the evidence found. The altered character of the evidence became the basis for the trial court's decision to admit the evidence of drugs and other bad acts.

Adam Swanson was housed in the medical section of the jail with the defendant. He testified the defendant told him that when the trooper pulled him over, he had consumed two drinks at a bar, had smoked marijuana, and had marijuana in his car. The defendant also admitted that he was a drug dealer and that he had cocaine, heroin, and approximately $98,000

---

[7] The trial court reconsidered this issue again three days before trial. The record contains no transcript of the hearing or the arguments made. Rule 5A:18 bars our consideration of that ruling on appeal. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). The defendant raises the ends of justice exception to Rule 5A:18 in his petition, but does not make a case for invoking it. See Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

[8] The Commonwealth contends the defendant defaulted the argument because he initially argued the evidence could not establish intent and his objection on the second grounds came too late since it was not made until after the prosecution's case in chief. The Commonwealth maintains the argument on appeal that the evidence was unduly prejudicial because his motive to escape is self-evident is a new argument and precluded by Rules 5A:12 and 5A:18.

cash at his residence. He feared being arrested and "being caught with other drugs and money that he had in his residence." The defendant told Swanson, "he had to get out of there and he didn't care what happened at that point." Swanson stated the defendant never expressed any remorse. The defendant did not object to Swanson's testimony.[9]

Swanson's testimony explained the defendant's reason to flee the initial traffic stop. It explained the purpose of his actions; it offered a motive for the crime. The evidence of the drugs and cash found in the defendant's apartment served two purposes in the murder trial. It bolstered Swanson's credibility by confirming details of his conversation with the defendant.[10] See Largin v. Commonwealth, 215 Va. 318, 319-20, 208 S.E.2d 775, 776-77 (1974). It also provided independent evidence of the defendant's motive for fleeing the scene of the traffic stop. See Bell v. Commonwealth, 264 Va. 172, 198, 563 S.E.2d 695, 713 (2002), cert. denied, 537 U.S. 1123 (2003).[11]

On the night Trooper Blanton was killed, the defendant was intoxicated, had marijuana in his car, $1,300 cash on his person, and was stopped for speeding. It was reasonable to infer that he knew the trooper would arrest him, discover the marijuana in his car, and seek to search his residence. Id.

The evidence was prejudicial in the sense that it bolstered the prosecution's case and damaged the defense, but that on its own does not establish a basis for exclusion. The defendant "has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the

---

[9] The defendant first objected to Swanson's testimony during his motion to strike after the Commonwealth had rested. "A litigant may not, in a motion to strike, raise for the first time a question of admissibility of evidence." Woodson v. Commonwealth, 211 Va. 285, 288, 176 S.E.2d 818, 821 (1970).

[10] The defendant argued that the informant's testimony was inherently incredible and his testimony could not support the admission of the drugs as motive evidence.

[11] The trial court admitted the evidence at trial solely to prove motive.

immediate crime for which he is on trial." Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 577 (1984). The trial court has broad discretion to admit prior bad acts evidence for permissible purposes if its "probative value . . . outweighs the prejudice to the accused." Goins v. Commonwealth, 251 Va. 442, 462, 470 S.E.2d 114, 128 (1996). The trial court properly cautioned the jury regarding the permitted purpose, motive, for which the evidence could be considered, and we presume the jury followed those instructions absent evidence to the contrary. LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983). We hold the trial court did not err in admitting the evidence of drugs and money found in the defendant's apartment for purposes of establishing motive.

We hold the search warrant issued upon probable cause and the evidence recovered was admissible at the murder trial. Accordingly, we affirm.

Affirmed.