COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Frank, Humphreys and Huff
Argued at Richmond, Virginia


TARIQ RASHAD AMIN

OPINION BY
v.        Record No. 0861-11-2          JUDGE ROBERT J. HUMPHREYS
APRIL 1, 2014

COUNTY OF HENRICO


UPON REMAND FROM THE SUPREME COURT OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

J. Burkhardt Beale (Boone Beale, PLLC, on brief), for appellant.

David R. Giroux, Assistant Commonwealth's Attorney, for appellee.


Tariq Rashad Amin ("Amin") was convicted in the Henrico County Circuit Court ("trial

court") of carrying a concealed weapon in violation of "Henrico County Ordinance 22-2

incorporating Virginia Code Section 18.2-308." Amin appealed his conviction to this Court.

The only assignment of error included in Amin's petition for appeal was that the trial court erred

in denying his motion to suppress. This Court granted Amin's petition for appeal. Amin then

filed an opening brief wherein he argued two assignments of error: (1) that the conviction is

void as a matter of law as there exists no Henrico County Ordinance 22-2 incorporating Virginia

Code § 18.2-308, and (2) the trial court erred in denying his motion to suppress. We declined to

address Amin's assignment of error alleging his conviction was void because he did not include

it in his petition for appeal, pursuant to Rule 5A:12, and we affirmed the trial court's ruling

denying Amin's motion to suppress. Amin appealed our ruling to the Virginia Supreme Court.

The Supreme Court reversed our holding that Rule 5A:12 barred us from considering Amin's

argument that his conviction order was void *ab initio*. Amin v. Cnty. of Henrico, 286 Va. 231, 237, 749 S.E.2d 169, 171 (2013). This case returns to us on remand from the Supreme Court to consider whether Amin's conviction order was void *ab initio*. Id. We hereby withdraw our previous opinion, Amin v. Cnty. of Henrico, 61 Va. App. 67, 733 S.E.2d 661 (2012), and address anew the merits of Amin's appeal.

## I. BACKGROUND

On December 1, 2010, Henrico County police officers approached Amin while he was sitting in his car and asked him if he had any weapons on his person. Amin stated that he did not. After the police ran a background check on Amin and informed him that his concealed weapons permit had expired, the officer again asked Amin if he had any weapons. This time Amin stated that he did have a weapon that was on his hip and underneath his jacket.

Officer S.C. Flores ("Flores") issued a Virginia Uniform Summons to Amin. Officer Flores marked two boxes indicating that Amin was charged with violating both "State" and "County" laws. The next few lines of the form were filled in to read: "LAW SECTION  (22-2) 18.2-308 . DESCRIBE CHARGE: Concealed Weapon w/ No CWP (CWP Revoked)."[1] After hearing a motion to suppress, which the trial court denied, and holding a bench trial, the trial court issued a final order finding Amin guilty. The order specifically stated that Amin was charged with a misdemeanor, "carrying a concealed weapon (Henrico County Ordinance 22-2 incorporating Virginia Code Section 18.2-308), as charged in the summons," and the trial court found Amin "guilty of carrying a concealed weapon (Henrico County Ordinance 22-2 incorporating Virginia Code Section 18.2-308), as charged in the summons."

---

[1] In context, "CWP" stands for "concealed weapons permit."

II. ANALYSIS

Amin argues that "the conviction is void as a matter of law as there exists no Henrico County Ordinance 22-2 incorporating Virginia Code Section 18.2-308." Because this assignment of error raises a pure question of law, we review the judgment of the trial court *de novo*. Collins v. Shepherd, 274 Va. 390, 397, 649 S.E.2d 672, 675 (2007).

Henrico County Ordinance 22-2 ("Ordinance 22-2") is a part of Chapter 22 of the Henrico County Code of Ordinances. Ordinance 22-2, by reference, criminalizes as a violation of county law all conduct that would be criminal under certain provisions of the Virginia Code. Ordinance 22-2 provides,

> Pursuant to the authority in Code of Virginia, § 46.2-1313,[2] all of the provisions and requirements of the laws of the state contained in Code of Virginia, title 46.2 (Code of Virginia, § 46.2-1-101 et seq.) and Code of Virginia, title 18.2, ch. 7, art. 2 (Code of Virginia, § 18.2-266 et seq.), and Code of Virginia, title 16.1, ch. 11, art. 9 (Code of Virginia, § 16.1-278 et seq.) except those provisions and requirements the violation of which constitutes a felony, and except those provisions and requirements which by their very nature can have no application to or within the county, are hereby adopted and incorporated in this chapter by reference and made applicable within the county.

---

[2] Code § 46.2-1313 reads,

> Ordinances enacted by local authorities pursuant to this chapter may incorporate appropriate provisions of this title, of Article 9 (§ 16.1-278 et seq.) of Chapter 11 of Title 16.1, and of Article 2 (§ 18.2-266 et seq.) of Chapter 7 of Title 18.2 into such ordinances by reference. Nothing contained in this title shall require the readoption of ordinances heretofore validly adopted. Local authorities may adopt ordinances incorporating by reference the appropriate provisions of state law before the effective date of such state law; provided that such local ordinances do not become effective before the effective date of the state law. The provisions of this section are declaratory of existing law.

Code § 18.2-308, which proscribes the act of carrying a concealed weapon, is located in Title 18.2, Chapter 7, Article 7 of the Code of Virginia. Ordinance 22-2 adopts and incorporates Title 18.2, Chapter 7, Article 2, *but not* Article 7.

Furthermore, Code § 46.2-1313, which is the legislative authority allowing Ordinance 22-2 to incorporate by reference certain Virginia Code sections, does not authorize incorporation by reference of Title 18.2, Chapter 7, Article 7. Virginia follows the Dillon Rule of strict construction. Richmond v. Confrere Club of Richmond, Inc., 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990). "The power of a county, like that of a municipal corporation, is controlled by Dillon's Rule, which authorizes the locality to exercise those powers or adopt ordinances that the legislature *expressly authorizes by statute* or that are conferred by necessary implication." Lawless v. Cnty. of Chesterfield, 21 Va. App. 495, 499, 465 S.E.2d 153, 154 (1995) (emphasis added). Local governing bodies do not have authority from the General Assembly to incorporate Title 18.2, Chapter 7, Article 7, therefore, Ordinance 22-2 could not have validly incorporated Code § 18.2-308.

We recognize that a fair reading of the summons shows that Officer Flores charged Amin with violating both Code § 18.2-308 and Ordinance 22-2. However, the trial court expressly wrote in its conviction order that Amin was charged with and was guilty of violating "Henrico County Ordinance 22-2 incorporating Virginia Code Section 18.2-308." Therefore, we are not persuaded by the County's argument that "the addition of '22-2' is purely erroneous to the face of the warrant, but does nothing to change the nature of what [Amin] was charged with." We recognize, rather, that "[a] court speaks through its orders, and we presume that these orders accurately reflect what transpired." Howerton v. Commonwealth, 36 Va. App. 205, 212, 548 S.E.2d 914, 917 (2001). "Because a 'circuit court speaks only through its orders,' we look to the sentencing order . . . to discern its holding." Pilson v. Commonwealth, 52 Va. App. 442, 444,

663 S.E.2d 562, 563 (2008) (quoting <u>Roe v. Commonwealth</u>, 271 Va. 453, 458, 628 S.E.2d 526, 529 (2006)).  On the record before us, Amin was only convicted of violating "Henrico County Ordinance 22-2 incorporating Virginia Code Section 18.2-308" –he was not convicted of violating a provision of the Virginia Code.

Because Ordinance 22-2 did not, and legally could not, incorporate Code § 18.2-308, the trial court convicted Amin of violating a county ordinance that could not punish the conduct alleged in the final order.  Therefore, a violation of "Ordinance 22-2 incorporating Code § 18.2-308" was a legally insufficient basis for a criminal conviction.  <u>See</u> <u>Mitchell v. Cnty. of Hanover</u>, 1 Va. App. 486, 489-90, 340 S.E.2d 173, 175 (1986) (where the Virginia Code section was not yet incorporated into the County Code at the time of appellant's arrest, the County Code section listed on the warrant did not state an offense, rendering the conviction pursuant to the County Code section invalid).

An order is void *ab initio*, "meaning it was without effect from the moment it came into existence," "'if the character of the order is such that the court had no power to render it.'" <u>Kelley v. Stamos</u>, 285 Va. 68, 75, 737 S.E.2d 218, 221-22 (2013) (quoting <u>Singh v. Mooney</u>, 261 Va. 48, 52, 541 S.E.2d 549, 551 (2001)).  In <u>Rawls v. Commonwealth</u>, 278 Va. 213, 683 S.E.2d 544 (2009), the Supreme Court held a sentence imposed in excess of statutory limitations to be void *ab initio* because "'the character of the judgment was not such as the court had the power to render.'"  <u>Id.</u> at 221, 683 S.E.2d at 549 (quoting <u>Anthony v. Kasey</u>, 83 Va. 338, 340, 5 S.E. 176, 177 (1887)).  "To restate the obvious:  the Constitution of Virginia authorized the General Assembly to confer power upon the circuit courts.  The General Assembly prescribed the applicable punishments for criminal offenses.  The punishment imposed in <u>Rawls</u> exceeded the power granted to the circuit court."  <u>Kelley</u>, 285 Va. at 76, 737 S.E.2d at 222.

Here, Ordinance 22-2 did not incorporate Code § 18.2-308, nor has the General Assembly authorized the County to do so. Therefore, the trial court did not have the power to convict Amin of "Henrico County Ordinance 22-2 incorporating Virginia Code Section 18.2-308," an offense that did not exist. We therefore hold that the conviction order was void *ab initio* because the trial court "exerted its power in a way not warranted by the law." Anthony, 83 Va. at 341, 5 S.E. at 178.

Because we hold that Amin's conviction was void *ab initio*, we need not address his second assignment of error alleging that the trial court erred in denying his motion to suppress.

Reversed and dismissed.

COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Huff
Argued at Richmond, Virginia

**PUBLISHED**

TARIQ RASHAD AMIN

OPINION BY
v.      Record No. 0861-11-2                    JUDGE ROBERT J. HUMPHREYS
OCTOBER 31, 2012

COUNTY OF HENRICO

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

J. Burkhardt Beale (Boone Beale, PLLC, on brief), for appellant.

David R. Giroux, Assistant Commonwealth's Attorney, for appellee.

Tariq Rashad Amin ("Amin") was convicted in the Circuit Court of the County of

Henrico ("trial court") of carrying a concealed weapon in violation of Henrico County Ordinance

22-2 which incorporates Code § 18.2-308.[1]  On appeal, Amin contends that (1) his "conviction is

void as a matter of law as there exists no Henrico County Ordinance 22-2 incorporating [Code

§ 18.2-308]," and (2) "the trial court erred in denying [his] motion to suppress."  For the reasons

that follow, we affirm.

---

[1] This case was originally before this Court styled Tariq Rashad Amin v. Commonwealth of Virginia.  As a result, the Office of the Attorney General entered its appearance on behalf of the Commonwealth.  However, given that the offense at issue in this case was for violation of a Henrico County ordinance, the Henrico County Commonwealth's Attorney Office was substituted as counsel for the County of Henrico, and we have changed the style of the case to reflect the true nature of the proceedings below and on appeal.

On appeal, we view the facts in the light most favorable to the prevailing party below, in this case the County. Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012). So viewed, the facts of this case are the following.

On December 1, 2010, Officers M.R. Fitzer ("Officer Fitzer"), D.J. Grant ("Officer Grant"), and S.C. Flores ("Officer Flores") responded to a call regarding a suspicious situation at a local Wendy's. The restaurant was located in an area that had been subject to a recent string of robberies and other crimes.[2] According to the dispatch, the employees were concerned about a parked vehicle that had been in the parking lot for a while with its lights still on. The occupant was still inside the vehicle, and the employees could not tell if he was awake. The Wendy's was closed at the time, although the employees were still there.

Officer Fitzer was the first to arrive on the scene, and he observed Amin's vehicle parked front end first in one of the parking spaces in the parking lot. The Wendy's property is laid out like many fast-food restaurants, with the building in the middle of a horseshoe shaped parking lot that allows for a drive-through around the building and parking spaces on the edges. On the side where Amin parked his vehicle, there was a fence in front of the parking spaces that separated the parking lot from that of the store next door. There were no other vehicles around Amin's vehicle. Officer Fitzer parked his cruiser one to one and a half car lengths away from Amin's vehicle in the parking lot in the area between the parking spaces and the Wendy's building.

---

[2] Officer Grant testified that there was a robbery at the "Bowl America" and some houses nearby which occurred in the area around that time frame. Officer Fitzer testified that there was a robbery at the "Roller Dome" too. Officer Flores testified that there was a robbery at the bowling alley, and other problems at the "Roller Dome" and 7-Eleven.

Before approaching Amin, Officer Fitzer gave Amin's license plate number to the police dispatcher. As he reached the car, he saw Amin in the vehicle, asleep or "kind of in, in consciousness." Meanwhile, Officer Grant arrived on the scene and parked his cruiser behind Officer Fitzer's. He approached Amin's vehicle on the passenger side. Officer Fitzer asked Amin what he was doing there. Amin responded that he was waiting for his uncle to come pick him up. Officer Fitzer asked how long his uncle would be, and Amin responded 45 minutes. Finally, he asked Amin if he had anything illegal in his car such as guns or weapons or if he had been drinking. Amin responded no.

While this was going on, Officer Flores pulled into the parking lot and parked behind Officer Fitzer's cruiser as well. Since Officer Flores was the primary officer of this beat, he took over the investigation. He asked Amin what he was doing there, and Amin replied that his car had overheated, and he was waiting in the parking lot, because it had died on him. Officer Flores then asked Amin for his identification in order to run a background check, and Amin handed him his driver's license. Officer Flores testified that Amin was very cooperative with him.

Using the license information, Officer Flores performed a background check and discovered that Amin had a revoked concealed weapons permit. Officer Flores asked Amin again whether he had any weapons in the car, and Amin replied that he did.[3] At that point, the officers were able to recover a handgun hidden in Amin's waistband, which Amin had concealed with his clothing. The officers arrested Amin, and he later admitted that he was aware that his permit had been revoked.

During the encounter, all three officers were wearing uniforms, and their cruisers were marked. The cruisers had their headlights on, but none of their emergency flashers were on.

---

[3] Officer Flores explained that he asked again if Amin had a weapon because people are often unaware that their concealed weapons permits have been revoked.

The officers issued Amin a summons for carrying a concealed weapon. Prior to trial, Amin filed a motion to suppress the evidence based on an alleged violation of his rights under the Fourth Amendment, which the trial court denied. The trial court subsequently found Amin guilty, and he noted this appeal.

## II. Analysis

### A. Henrico County Ordinance 22-2

On Amin's summons, Officer Flores filled in "(22-2) 18.2-308" as the law section violated, and he checked the boxes for a violation of both state and county laws. He then listed a description of the charge as "Concealed weapon W/NO CWP (CWP Revoked)."[4] Ultimately, the trial court convicted Amin, and the final order reflected that the offense was "carrying a concealed weapon (Henrico County Ordinance 22-2 incorporating Virginia Code Section 18.2-308)." On appeal, Amin contends that "there exists no Henrico County Ordinance 22-2 incorporating [Code § 18.2-308]" and, therefore, the trial court erred in convicting him of such offense as the "conviction is void as a matter of law."

Henrico County Ordinance 22-2 is a part of Chapter 22 of the Henrico County Code of Ordinances, which is entitled "Traffic and Vehicles."[5] It is essentially an omnibus ordinance that by reference criminalizes as a violation of county ordinance all conduct that would be criminal under a myriad of provisions of the Code of Virginia. It simply states,

---

[4] In context, "CWP" is an acronym for "Concealed Weapons Permit."

[5] Although this is an Henrico ordinance and not part of the Code of Virginia, we recognize the general principle that "the summary title is not part, and does not determine the meaning, of the body of a statute." Mason v. Commonwealth, 217 Va. 321, 323, 228 S.E.2d 683, 684 (1976).

Pursuant to the authority in Code of Virginia, § 46.2-1313,[6] all of the provisions and requirements of the laws of the state contained in Code of Virginia, title 46.2 (Code of Virginia, § 46.2-1-101 et seq.) and Code of Virginia, title 18.2, ch. 7, art. 2 (Code of Virginia, § 18.2-266 et seq.), and Code of Virginia, title 16.1, ch. 11, art. 9 (Code of Virginia, § 16.1-278 et seq.) except those provisions and requirements the violation of which constitutes a felony, and except those provisions and requirements which by their very nature can have no application to or within the county, are hereby adopted and incorporated in this chapter by reference and made applicable within the county.

As the criminal act of carrying a concealed weapon under Code § 18.2-308 is included in Title 18.2, Chapter 7, Article 7 of the Code of Virginia, and the ordinance only adopts and incorporates the provisions of Article 2 of that title and chapter, Amin argues that his conviction is void and that this Court should dismiss the case as a result.

However, Amin never included this assignment of error in his petition for appeal, and so we cannot address it on appeal.[7] "Pursuant to Rule 5A:12(c), '[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court.'" Doss v. Commonwealth, 59 Va. App. 435, 451 n.2, 719 S.E.2d 358, 366 n.2 (2012); Gregory v. Commonwealth, 46 Va. App.

---

[6] Code § 46.2-1313 reads

Ordinances enacted by local authorities pursuant to this chapter may incorporate appropriate provisions of this title, of Article 9 (§ 16.1-278 et seq.) of Chapter 11 of Title 16.1, and of Article 2 (§ 18.2-266 et seq.) of Chapter 7 of Title 18.2 into such ordinances by reference. Nothing contained in this title shall require the readoption of ordinances heretofore validly adopted. Local authorities may adopt ordinances incorporating by reference the appropriate provisions of state law before the effective date of such state law; provided that such local ordinances do not become effective before the effective date of the state law. The provisions of this section are declaratory of existing law.

[7] Amin's petition for appeal was filed by his previous attorney, Shannon L. Taylor. Following Ms. Taylor's election as Commonwealth's Attorney of Henrico County, this Court granted Amin leave for Ms. Taylor to withdraw and for Mr. Beale to substitute as counsel. As the issue is not presently before us, we offer no opinion as to any conflict of interest created by Ms. Taylor's apparent representation of both parties in this case.

683, 694, 621 S.E.2d 162, 168 (2005); <u>Thompson v. Commonwealth</u>, 27 Va. App. 620, 626, 500

S.E.2d 823, 825-26 (1998); Rule 5A:12(c). Amin attempts to circumvent this rule by arguing

that the final order is void *ab initio*, not merely voidable, and therefore, he may attack it at any

time, including for the first time on appeal. It is well recognized that an order which is void

*ab initio* is "a complete nullity and it may be 'impeached directly or collaterally by all persons,

anywhere, at any time, or in any manner,'" <u>Singh v. Mooney</u>, 261 Va. 48, 51-52, 541 S.E.2d 549,

551 (2001) (quoting <u>Barnes v. Am. Fertilizer Co.</u>, 144 Va. 692, 705, 130 S.E. 902, 906 (1925)),

whereas an order that is merely voidable "is subject to direct attack at any time before the

judgment becomes final, but is not subject to collateral attack," <u>Pope v. Commonwealth</u>, 37

Va. App. 451, 456, 559 S.E.2d 388, 390 (2002).

However, in his effort to seek appellate review of an issue not previously raised as void

*ab initio,* Amin overlooks the fact that he has not properly placed this Court in a posture to do so.

We cannot even begin to analyze whether the defect in the charging document and final order

caused this order to be void or merely voidable, because Amin's failure to comply with Rule

5A:12(c) removes the issue from this Court's appellate purview.

> While it is true that one may challenge subject matter jurisdiction
> at any point, one must properly be in a court in the first place in
> order to do so. That is, an appellate court must properly have
> acquired appellate jurisdiction itself before it can hear a challenge
> to any lower court or agency's actions.

<u>Russell v. Va. Bd. of Agric. & Consumer Servs.</u>, 59 Va. App. 86, 94, 717 S.E.2d 413, 417

(2011). In this case, Amin failed to comply with Rule 5A:12, by omitting this assignment of

error from his petition for appeal. "Under Rule 5A:12(c), 'only questions presented[8] in the

---

[8] Prior to their revision, the rules governing this Court required statements of the assigned error to the trial court under the heading of "questions presented." Under the revised rules, the appropriate designation is now "assignments of error." <u>See</u> <u>Fauquier County Dep't of Soc. Servs. v. Ridgeway</u>, 59 Va. App. 185, 188 n.1, 717 S.E.2d 811, 813 n.1 (2011).

petition for appeal will be noticed by the Court of Appeals.' Therefore, 'no appeal was granted by this Court on that issue,' and appellant may not unilaterally add it as a new issue." Thompson, 27 Va. App. at 626, 500 S.E.2d at 825 (quoting Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991)). Rule 5A:12(c) is strictly enforced and does not contain an "ends of justice" exception. Id. at 626, 500 S.E.2d at 826. Thus, this Court cannot and we do not address Amin's first assignment of error.

### B. Motion to Suppress

In the lone assignment of error that was included in the petition for appeal and granted by this Court for appellate review, Amin assigns error to the trial court's denial of his motion to suppress. We find no error in the trial court's conclusion that Amin's encounter with the police officers was consensual and that no Fourth Amendment violation occurred. Thus, we hold that the trial court did not err in denying the defendant's motion to suppress.

"When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence." Branham, 283 Va. at 279, 720 S.E.2d at 77. Furthermore, on appeal, "the defendant has the burden of showing that even when the evidence is reviewed in that light, denying the motion to suppress was reversible error" and we review the application of the law to the facts *de novo*. Id.

Amin argues that he was seized under the meaning of the Fourth Amendment without a reasonable articulable suspicion or probable cause at the time the police found the weapon on his person. He contends that he was seized, because the police had his license and he could not move his vehicle since it was blocked in. The County counters that the encounter was consensual or, in the alternative, that the officers were justified in conducting a brief

investigatory stop based on a reasonable articulable suspicion that Amin was engaged in criminal activity.

Our jurisprudence recognizes three forms of police citizen encounters:

> First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (internal citations omitted).

Consensual encounters between police officers and citizens are permissible and do not constitute a seizure under the Fourth Amendment, as "indeed, it is difficult to envision their ability to carry out their duties if that were not the case." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008). Thus, the question of "[w]hether a seizure has occurred for Fourth Amendment purposes depends upon whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." McGee, 25 Va. App. at 199-200, 487 S.E.2d at 262; United States v. Mendenhall, 446 U.S. 554 (1980). This "'reasonable person' test is objective, and presumes an innocent person rather than one laboring under a consciousness of guilt." Malbrough, 275 Va. at 169, 655 S.E.2d at 4.

In this case, Amin was asleep in his vehicle in a Wendy's parking lot when three police officers pulled their cruisers into the parking lot behind him. While the ensuing encounter may have been a rude awakening for Amin, it was entirely consensual. During the encounter, the three officers pulled their cruisers behind Amin's vehicle and approached him. In doing so, they

left enough room for Amin to pull his car out.[9] Furthermore, the officers did not engage their emergency lights. When the officers approached the vehicle, they asked standard non-accusatory questions, such as what Amin was doing, and whether he had anything illegal in his car. During the encounter, Officer Flores asked Amin for his identification, and Amin complied with the request. While certain aspects of the encounter may tend to indicate that a seizure occurred, such as the number of officers and the fact that they were wearing uniforms, we examine whether there was a seizure under the totality of the circumstances, and under this standard a reasonable person would have believed that he or she was free to leave in this case. Therefore, we find that the encounter was consensual, and thus, the trial court did not err in denying Amin's motion to suppress.

Amin argues that this was not a consensual encounter, and relies primarily upon Davis v. Commonwealth, 37 Va. App. 421, 559 S.E.2d 374 (2002), which is easily distinguishable from this case. In Davis, this Court held that under the totality of the circumstances, an encounter was not consensual where police pulled their cruisers behind the defendant's car after she parked, thereby blocking her from leaving, approached the vehicle, and informed the defendant that she was suspected of transporting narcotics. Id. at 433, 559 S.E.2d at 379. In holding the encounter not to be consensual in that case, we relied heavily upon our holding in McGee.

---

[9] While there was much debate about whether Amin could have moved his car at trial and on appeal, the trial court made a factual finding that his vehicle was not blocked by the police vehicles and he could have pulled his car out of the parking space if he had chosen to. We are bound by that finding unless it is plainly wrong or without evidence to support it. Commonwealth v. Smith, 281 Va. 582, 589, 709 S.E.2d 139, 141 (2011). The record indicates that the closest police cruiser to Amin's vehicle was spaced one to one and a half car lengths behind it. Officer Fitzer testified that Amin "had enough space to pull his vehicle out if he choose [sic] so." Furthermore, the parking spaces surrounding his vehicle were empty. This left plenty of room for Amin to drive away should he have wanted to, and thus we cannot say that the trial court's finding was plainly wrong or without evidence to support it.

In McGee, we held that

> when a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the "totality of the circumstances" to determine whether a reasonable person would feel free to leave.

McGee, 25 Va. App. at 200, 487 S.E.2d at 262. This makes sense, because, by asking such a question, "the police 'convey a message that compliance with their requests is required,' and 'that failure to cooperate would lead only to formal detention.'" Id. (quoting Florida v. Bostick, 501 U.S. 429, 437 (1991); United States v. Berry, 670 F.2d 583, 597 (5th Cir. 1982)). The police officers made no such assertion in this case, so Amin's reliance upon Davis is misplaced.

The fact that the officers asked for Amin's identification and held his driver's license until after he admitted to having a weapon does not change our analysis. "The Fourth Amendment does not require any level of suspicion to justify non-coercive questioning by officers, including a request for identification." Branham, 283 Va. at 279, 720 S.E.2d at 77. Furthermore, because Amin was already parked and thus not operating his vehicle on a public highway and the police officers had not signaled for him to stop, he was not required to provide his driver's license to the officers. Therefore, Officer Flores' request to see Amin's identification was just that, and Amin's consent was voluntary. See id. at 280, 720 S.E.2d at 78.

As Amin's encounter with the police officers was entirely consensual, his constitutional rights were never violated, and thus, the trial court did not err in denying his motion to suppress.

### III. Conclusion

Because Amin did not include his first assignment of error in his petition for appeal, we cannot address it on appeal. Furthermore, we find that the trial court did not err in denying

Amin's motion to suppress, as his encounter with the police officers was entirely consensual, and thus, we affirm the judgment below.

Affirmed.