BURTON C. LAYNE

v.

LINDA LAYNE HENDERSON, ADMINISTRATRIX, ETC.

Record No. 831614

E. BRUCE HARVEY

v.

LINDA LAYNE HENDERSON, ADMINISTRATRIX, ETC.

Record No. 831548

November 26, 1986

Present: All the Justices

*William K. Grogan* for appellant. (Record No. 831614)

*J. Rodney Johnson (John Edward Lane, III; Eller & Lane*, on brief), for appellee. (Record No. 831614)

*A. David Hawkins (Overbey, Overbey & Hawkins*, on briefs), for appellant. (Record No. 831548)

*J. Rodney Johnson (John Edward Lane, III; Eller & Lane*, on brief), from appellee. (Record No. 831548)

COMPTON, J., delivered the opinion of the Court.

The broad question for decision in this appeal is whether the provisions of an option contract violate the rule against perpetuities.

The facts have been stipulated. In 1948 and 1960, three brothers, Dempsey G. Layne, Carter G. Layne, and appellant Burton C. Layne purchased as tenants in common farms in Pittsylvania County, one containing approximately 225 acres and the other containing about 150 acres. Subsequently, the brothers executed the contract in question dated April 30, 1963. The brothers were parties to the agreement along with the wives of Carter and Burton Layne. Dempsey Layne was not married.

The document, drafted by appellant E. Bruce Harvey, an attorney at law, recited that the brothers were "owners, share and share alike" of the two tracts and that they "desire to make provision in case either of them desires to sell their interest in the aforedescribed real estate during their lifetime and also to make provision for the purchase by the survivor or survivors of either of them who die." The contract fixed the value of the real estate "for the purposes of this agreement" at $30,000, "the interest of each of the three shares being $10,000."

The contract also provided as follows:

"2. During the joint life of Dempsey G. Layne, Carter G. Layne and Burton C. Layne, neither of them shall sell to any other party their interest in the aforesaid real estate without first offering to the two other owners their interest for the sum of $10,000.00 the payment of which sum shall be by the same installments, period of time and with security as set out in item (3).

"3. Upon the death of either of Dempsey G. Layne, Carter G. Layne or Burton C. Layne, the survivor or survivors of either of them shall have the option to purchase all of the interest of the deceased party or parties upon the following terms:

a. The option to purchase the interest of the decedent or decedents shall be exercised by the survivor or survivors by serving written notice on the administrator or executor of the decedent or decedents within thirty days after the qualification of such personal representative.
b. The purchase price of each of the interests shall be the sum of $10,000.00.
c. In the event two of the said parties survive, they shall have, among themselves, equal rights to exercise the option, but if the option is not exercised by one then the other shall succeed to the right to exercise said option for the entire amount or so much thereof as the other party does not desire to exercise."

The remainder of the agreement provided for payment of the $10,000 in installments, dower interest of the wives, security for any unpaid purchase price, and conveyance by a deceased brother's personal representative.

Dempsey Layne never married and died childless in 1976, his only heirs at law being his brothers who succeeded to his interest in the farms. Carter Layne died intestate on July 15, 1981, leaving as his surviving heirs at law his wife, a daughter, Linda Layne Henderson, and a son, Gerald Carter Layne. The daughter qualified as administratrix of her father's estate on July 30, 1981. Subsequently, a writing dated August 4, 1981 signed by Burton

Layne was served on the administratrix, notifying the personal representative that he was exercising the option to purchase the property under the agreement.

Thereafter, the administratrix, the appellee here, filed the present proceeding in April 1982 by a motion for declaratory judgment in equity against Burton C. Layne. The personal representative asserted that, at the time the option contract was signed, the time of qualification of the personal representative of a deceased brother's estate was unknown and could not have been ascertained to occur within any time certain. The plaintiff further alleged that because the option was to be exercisable at a time dependent on the qualification of a personal representative, such qualification was not an occurrence certain to arise at any point within the time required by the rule against perpetuities. Thus, she asserted, the option by its terms was capable of being exercised beyond the period allowed by the rule. The plaintiff asked the court to "declare the purported option contract . . . void and unenforceable as being in direct violation of the Rule Against Perpetuities."

In an answer and cross-bill, defendant asserted that paragraph 3(a) of the agreement dealing with qualification of a personal representative merely specifies the procedure by which the option is to be exercised. He alleged that the substantive terms of the agreement provide it could only be exercised during the lifetimes of the brothers and that there was no provision for exercise of the option by heirs or assigns of the brothers, nor for exercise by any other party. Defendant alleged that the exercise of the option by him, or any brother, "during his lifetime, would cause the contingent interest to vest; however, non-exercise of the option during his lifetime, would cause the contingent interest created by the option Agreement to fail at his death." Defendant asserted it was "absolutely certain" that this contingent interest would vest or fail entirely within the lifetimes of the parties to the option contract and, because all the brothers were "lives in being" on the effective date of the agreement, the agreement does not violate the rule. Defendant asked the court to declare the agreement to be valid and to require the plaintiff and Carter Layne's widow to execute and deliver all necessary documents to carry out the terms of the contract.

While the suit was pending, attorney Harvey was permitted by the trial court to intervene as a party defendant. In his petition to intervene, Harvey asserted he had a direct pecuniary interest in

the outcome of the proceeding by virtue of his potential liability as scrivener of the agreement, in the event the document was declared void.

After considering the pleadings, the stipulation of facts, and memoranda of law, the chancellor ruled in favor of the plaintiff, finding the contract violated the rule against perpetuities. From the June 1983 final decree, we awarded Layne and Harvey separate appeals, consolidating them for review.

■ The law pertinent to this case is established. Prior to enactment of the so-called "wait and see" statute in 1982, the rule against perpetuities required that interests in property must vest, if at all, within the period specified by the rule. *The Ryland Group, Inc.* v. *Wills*, 229 Va. 459, 463, 331 S.E.2d 399, 402 (1985).* Ordinarily, the interest must vest within a period measured by a life or lives in being plus 21 years and 10 months. *Id.*, 331 S.E.2d at 402; *United Virginia Bank* v. *Union Oil Co.*, 214 Va. 48, 51, 197 S.E.2d 174, 177 (1973). Stated differently, an executory interest is void for remoteness if, at its creation, there exists a possibility, however remote or uncertain, that the interest will not take effect within the period required by the rule. *Skeen* v. *Clinchfield Coal Corp.*, 137 Va. 397, 403, 119 S.E. 89, 90 (1923). And, "[t]he rule against perpetuities is applicable to option contracts, which are unenforceable if they may not be exercised within the period of the rule." *The Ryland Group, Inc.*, 229 Va. at 463, 331 S.E.2d at 402.

On appeal, the plaintiff argues that the trial court correctly decided that the contract violated the rule and was void. The plaintiff contends that on the date the agreement was executed, there existed the distinct possibility the specific contingency, that is, the qualification of a decedent's personal representative, might not occur until after the period required by the rule. Plaintiff observes that "it is common knowledge that a number of estates, perhaps even a majority, never have any qualification thereon," and that no statute fixes the minimum time period within which a qualification must take place. Thus, she contends, a qualification upon an estate "is an event that may not ever occur, or may not occur until decades or generations after the decedent's death," and cer-

---

* The "wait and see" statute, Code § 55-13.3, effective July 1, 1982, which significantly modifies the harsh rule against perpetuities, is not applicable to this suit filed April 27, 1982. The enactment specified that the provisions of the section shall not apply to or affect pending litigation. Acts 1982, ch. 249.

tainly "might not occur until after the expiration of a period of lives in being and 21 years from the date of the agreement."

To illustrate her argument, the plaintiff poses a hypothetical in which A, B, and C and the wives of B and C execute an option contract like the one in this case. All these persons are lives in being. Plaintiff further assumes that A and the wives of B and C die, leaving B and C as the only lives in being. Plaintiff next assumes that B dies some years later and, two days after B's death, C assigns his interest in the option to X corporation. Then C dies two years after B. All the lives in being are dead and there remains only the 21 years left on the perpetuity period. Plaintiff next assumes that qualification on B's estate does not occur until 25 years after B's death. X corporation then duly serves notice upon B's personal representative of intent to exercise the option. Plaintiff concludes that the attempt to exercise the option occurred after the expiration of the perpetuity period and thus is void. She argues that because such a scenario was possible in the present case, the trial court correctly granted her the relief she sought.

In addition, the plaintiff argues, and the trial court so found, that the " 'benefit' portion" of this option contract was assignable under Virginia law. She contends that the description of the optionee(s) in the agreement as "survivor or survivors" did not make the option inherently personal, and thus nonassignable, nor can the language properly be construed to be a specific prohibition against assignment. She says that the phrase "survivor or survivors" was used "merely as a generic or short-hand phrase to describe the one(s) to whom the rights under the agreement would flow in the first instance" and not as a precise stipulation "intended to prevent the survivor of the three brothers from assigning his rights thereunder after the death of the second brother."

We do not agree with the plaintiff's contentions. Even though the broad question in this appeal is whether the contract violates the rule against perpetuities, the specific issue to be addressed involves the meaning and effect of the phrase "survivor or survivors," within the context of this agreement. Therefore, resolution of this controversy principally requires interpretation of a contract. In reviewing the agreement, we must gather the intent of the parties and the meaning of the language, if we can, from an examination of the entire instrument, giving full effect to the

words the parties actually used. *Goodson* v. *Capehart*, 232 Va. 232, 236, 349 S.E.2d 130, 133 (1986).

■ Upon such examination, we hold that, in this contract, the words "survivor or survivors" refer to the three brothers, not their estates, successors or assigns. Ordinarily, "survivor" means "one who outlives another." Black's Law Dictionary 1297 (5th ed. 1979). The word does not mean "successor" ("[o]ne that . . . follows; one who takes the place that another has left . . . ." *Id.* at 1283). Significantly, the language of this document limits the phrase "survivor or survivors" to "of either of them." And, "them" can only mean the brothers.

We also hold that the proper construction of the words as used in the agreement requires exercise of the option within the lifetime of the brothers. The whole tenor of the agreement demonstrates an intention to ensure that the brothers retain exclusive ownership of the subject property during the lives of each of them and that the last option would expire upon the death of the last brother. For example, the contract commenced by reciting that the brothers were "owners, share and share alike" of the property and that they desired "to make provision in case *either of them* desire[d] to sell their interest in the . . . real estate during their *lifetime* and also to make provision for the purchase by the survivor or survivors *of either of them* who die." (Emphasis added.)

Paragraph 2 addressed the period encompassing the lives of the three brothers while paragraph 3 spoke to the time when one or more of them died. Paragraph 2 provided that during "the joint life of" the brothers, neither brother should sell to "any" other party their interest in the real estate without first offering that brother's interest to the other brothers. Paragraph 3 provided that upon the death of any of the three, "the survivor or survivors of either of them" shall have the option to purchase "all" the interest of the deceased brother or brothers. Finally, paragraph 3(c) addressed a situation where two brothers survive: "In event two of the said parties survive, they shall have, *among themselves,* equal rights to exercise the option." (Emphasis added.) Paragraph 3(a), however, merely dealt with the notice procedure for exercising the option, as Layne and Harvey argue, in the event of death of one or more of the brothers.

■ Nowhere in the agreement is there language which demonstrates an intention to provide an option to successors of any brother. Had this been contemplated, the document would have so

specified. Moreover, assignment of rights by one of the brothers would clearly violate the parties' intention. *See Dove Co.* v. *New River Coal Co.*, 150 Va. 796, 803, 826-27, 143 S.E. 317, 320, 327 (1928). Assignability would permit a brother to sell his interest to a stranger who, in turn, could exercise the option during the lifetime of a brother and force a sale of the optionor's interest, the very circumstance the agreement was drawn to avoid.

■ Accordingly, the agreement does not violate the rule against perpetuities because the option must be exercised, if at all, by a surviving brother, a life in being at the time the executory interest was created on April 30, 1963. Thus, the decree appealed from will be reversed and our mandate will declare that the agreement in question is valid, binding, and enforceable.

*Reversed and final judgment.*