COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and AtLee
Argued at Richmond, Virginia

DAVID L. HOST

MEMORANDUM OPINION[*] BY
v.      Record No. 2134-14-4                    JUDGE WESLEY G. RUSSELL, JR.
                                                FEBRUARY 9, 2016
WINFREY R. HOST

UPON A REHEARING

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dennis J. Smith, Judge

Peter M. Fitzner (Matthews, Snider & Fitzner, on briefs), for
appellant.

(Kenneth L. Crosson, on brief), for appellee.


David L. Host ("father") appealed to this Court from orders of the trial court involving

the construction and enforcement of support provisions contained in the parties' final decree of

divorce. Specifically, he argued the circuit court erred in finding he was not entitled to a credit

against his monthly support obligations for payments that his father, James Host, made in excess

of the amount of ordered monthly child support and further erred in its subsequent rulings

regarding attorneys' fees and support arrearages. By memorandum opinion issued on November

3, 2015, we affirmed the circuit court on these issues and awarded Winfrey R. Kirkpatrick f/k/a

Winfrey Host ("mother") the reasonable attorneys' fees she incurred in the course of the appeal.

See Host v. Host, Record No. 2134-14-4, 2015 Va. App. LEXIS 314 (Va. Ct. App. Nov. 3,

2015). Prior to the issuance of the mandate, father timely filed a petition for rehearing, arguing

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that, although he had not presented such a claim "in the instant appeal prior to" the petition for rehearing, the child support provisions of the divorce decree were void *ab initio*. Father argues that, because the child support provision is void, the circuit court erred in its determinations regarding his support obligation, arrearages, and attorneys' fees. For the reasons that follow, we agree with father that the child support provision is void. Accordingly, we vacate our prior opinion in this matter, reverse the decision of the circuit court, and remand the case to the circuit court for further proceedings.

BACKGROUND

Father and mother were married in 1994 and were divorced by final decree dated April 30, 2012. Three children, all of whom remain minors, were born of the marriage: a son and two daughters. The circuit court awarded custody of all three children to mother, and the parties entered into an agreement relating to the children's care and maintenance, including regular periodic child support. The divorce decree states, "whereupon, the Court having considered the agreement and representations of the parties in light of the factors set forth in the Code of Virginia and other relevant factors, it is adjudged, ordered and decreed as follows . . . ."

Paragraph 4 of the final decree[1] sets father's child support obligation at $2,000 a month, an amount "calculated by agreement of the Parties as an upward deviation from the presumed [guideline] amount . . . ," with such support continuing until all three of the parties' children either die or are emancipated upon attaining the age of eighteen. In addition, "[t]he ordered child

---

[1] The final decree contains multiple sections containing numbered paragraphs and the numbering of the paragraphs begins anew in each section. As a result, there are multiple paragraphs that have the same introductory number. For example, the order contains at least three paragraphs numbered "4." Unless otherwise indicated, a reference to a paragraph number in this opinion shall refer to the numbered paragraphs in the section of the final decree that begins with "whereupon, the Court having considered the agreement and representations of the parties in light of the factors set forth in the Code of Virginia and other relevant factors, it is adjudged, ordered and decreed as follows . . . ."

support shall not be reduced or terminated when one or more of the Parties' minor children reside with [the father, and] . . . shall not be reduced or terminated when the first or second of the Parties' minor children is/are emancipated." Paragraph 4 also states that "[c]hild support may be modified upward due to a change in circumstances but may not be reduced" and that father's obligation would be unaffected by mother's remarriage. In Paragraph 5, the final decree directs that mother "shall expressly acknowledge and credit any payment she shall receive from [father's] father[, James Host,] and/or stepmother toward [his] child support obligations set forth in this Order."

As part of their divorce, both parties waived spousal support and agreed to sell or refinance the marital home. In addition, Paragraph 7 provides that mother is entitled to $30,000 from father for attorneys' fees. Nevertheless, "so long as [father] is current and timely in his support payments, [he] is not required to pay any of these fees." Paragraph 8 similarly relieves father of a stipulated support arrearage of $5,826, "so long as [he] is current and timely in his child support payments[.]" In addition to these conditional waivers, the final decree, in Paragraph 6 of the order, provides that, upon default of his support payments, father "shall pay all costs of enforcement of this Order[,] including but not limited to reasonable attorney fees, costs, travel and lodging costs of [mother], sheriff or special process server, court reporter and transcript fees."

Subsequent to their divorce, the parties presented to the circuit court a consent decree, entered July 31, 2013, modifying custody by transferring to father physical custody of their son. The agreed order maintains the $2,000 payable by father as monthly child support and provides that "[t]he parties have agreed that child support shall not be affected by this agreement or modified due to [the son] relocating back to [his father's residence]." The order recites that the child support was calculated using the incomes of the parties as set forth in the final decree.

On August 13, 2013, father filed a motion in the circuit court seeking a declaratory judgment that, under Paragraph 5 of the final decree, he was entitled to a credit for certain monies given to mother by father's father (hereinafter "James Host") that were in excess of his $2,000 monthly obligation.[2] Mother demurred in response.

While the declaratory judgment action was pending, mother filed, on October 21, 2013, a motion for rule to show cause for father's alleged failure to comply with the terms of the final decree and modified custody order, including provisions related to child support, attorneys' fees, and sharing of his federal tax return. Mother specifically alleged failure to pay the full $2,000 a month and, based on his noncompliance, sought enforcement of the penalty provisions related to her conditional waiver of collection of arrearages and attorneys' fees.

A hearing was held on December 13, 2013. The court ruled that the final decree did not allow for excess payments from James Host to be credited towards another month; rather such monies were received as gifts and thus father was found to be in arrears and in violation of the support orders. The court, however, did not find the violation willful and declined to find father in contempt. This ruling was memorialized in an order entered January 31, 2014, which "ma[de] no finding or order concerning" the provisions relating to mother's collection of past arrearages and attorneys' fees, "leav[ing] those issues to be resolved by agreement of the Parties or by other proceeding in this cause." The matter remained on the court's docket.

On March 7, 2014, father filed a second motion for declaratory judgment, seeking an order directing mother to deposit support checks, seeking attorneys' fees, and a finding that mother waived any claim of collecting on the penalty provisions.

_____

[2] Upon the filing of the motion, father unilaterally claimed a credit for the amounts in question, resulting in months in which he paid mother less than $2,000 in child support.

- 4 -

On March 13, 2014, mother filed a "Motion to Enforce Order" raising issues arising from the final decree's provisions related to the martial home, tax returns, medical costs payments, collection of the conditionally waived attorneys' fees and arrearages, and attorneys' fees associated with the ongoing litigation. On May 5, 2014, mother filed another motion, entitled a "Motion for Resolution of the Remaining Issues in this Cause," claiming the issues related to attorneys' fees, application of the final decree's default provisions, and tax returns remained unresolved. Mother also sought to compel father to sell or refinance the marital home in accord with the divorce decree.

On May 27, 2014, father filed his "Response to [Mother's] 'Motion to Enforce Order' and Motion for Resolution of the Remaining Issues in this Cause." In this pleading, father raised, for the first time, the issue of whether the child support provision was void because it impermissibly limited the circuit court's ability to modify child support in violation of the rule set out in Kelley v. Kelley, 248 Va. 295, 449 S.E.2d 55 (1994). Father reasoned that, if the underlying order is void, he did not owe the claimed support arrearage and that the mother was not entitled to the relief she sought in her May 5, 2014 motion.

On June 27, 2014, the circuit court held a hearing on whether the agreement was void under Kelley. The circuit court took the matter under advisement, issuing a letter opinion and order on August 26, 2014. The court concluded that the "parties' Final Divorce Order and the July 13, 2013 Agreed Order Modifying Child Custody contain no void provisions." Father filed

a motion to reconsider, which was denied September 15, 2014. On September 24, 2014, father noted his appeal of the August 26, 2014 order ("August order").[3]

Notably, neither the circuit court's letter opinion nor its August order resolved all of the issues raised by mother's May 5, 2014 motion. The matter was continued on the docket, and the parties returned to the circuit court for a hearing on October 16, 2014.

At that hearing, the parties sought entry of an order and to address multiple issues related to the proceedings, beginning with father's filing of his initial motion for declaratory judgment.

On October 21, 2014, the court entered an order, that, among other things, directed father to pay the conditionally waived $30,000 attorneys' fees and $5,826 arrearage, appointed a special commissioner for the sale of the house, denied father's motion for support, and awarded mother an additional $30,000 for attorneys' fees incurred in the litigation that began with the filing of father's declaratory judgment action in 2013. Father noted his appeal of this order on November 20, 2014.

In his appeal of the circuit court's October 21, 2014 order, father asserted four assignments of error:

> 1. The trial court erred by misconstruing ¶5 of the parties' Final Order of Divorce by failing to consider the parties' intent as expressed in the entire Final Divorce Order; by rewriting the plain meaning of the parties' agreement; and by requiring specific

---

[3] As father notes in his petition for reconsideration, he "did not present his claim that the challenged provisions are void *ab initio* in the instant appeal prior to this [p]etition . . . ." He did, however, raise the issue in another appeal to this Court. See Host v. Host, Record No. 1774-14-4. We determined that that appeal was not properly before us because the August order was neither a final order nor an appealable interlocutory order. See Code §§ 17.1-405(3) and 17.1-405(4). In an unpublished order dismissing the appeal, we found we lacked jurisdiction, specifically noting that "[b]ecause we lack jurisdiction to entertain this appeal, we offer no opinion on whether the circuit court's ruling on this issue was correct on the merits." Host v. Host, Record No. 1774-14-4 (unpublished order Oct. 13, 2015).

"magic language" as a prerequisite for honoring the parties' contract.[4]

2.      The trial court erred in requiring Defendant to pay $30,000 and $5,826 pursuant to ¶¶ 7 and 8 of the Final Divorce Order, as such payments are solely conditioned upon the trial court's reversible error as set forth in Assignments of Error 1 above.

3.      The trial court erred in awarding Mother $30,000 "for attorney fees relating . . . through October 15, 2014," as such attorney's fees are solely conditioned upon the trial court's reversible error as set forth in Assignments of Error 1 and 2 above.

4.      Even if this Court holds that the trial court did not otherwise commit reversible error, the trial court lacked the authority and erred in awarding Mother the attorneys' fees that she incurred after January 31, 2014.

In a memorandum opinion issued on November 3, 2015, we affirmed the circuit court on these issues and awarded mother the attorneys' fees she incurred in the course of the appeal. Prior to the issuance of the mandate, father timely filed a petition for rehearing, arguing that Paragraph 4 was void *ab initio*, and therefore, the circuit court erred in reaching its conclusions with respect to these other issues.

We requested a response to the petition for rehearing from mother, which she filed on December 28, 2015. We granted the petition for rehearing by order entered January 4, 2016, and oral argument on the petition was noticed for January 20, 2016.

ANALYSIS

*Jurisdiction*

Before we can address the merits of an appeal, we first must conclude that we have jurisdiction. Comcast of Chesterfield Cnty., Inc. v. Bd. of Supervisors, 277 Va. 293, 299, 672

---

[4] Mother argues that this issue cannot be reviewed because it was decided by order dated January 31, 2014, an order father did not appeal. Even assuming father was able to appeal the order by way of an interlocutory appeal, he was not required to do so. Because the January 31, 2014 order left unresolved mother's claim for the conditional fees and support, it was not a final order.

S.E.2d 870, 872 (2009) ("[T]he question of jurisdiction is one for the determination of the appellate court only. Before the merits of this case can be considered, [this Court] must determine whether it has jurisdiction." (internal quotation marks and citations omitted)); see also Kotara v. Kotara, 55 Va. App. 705, 707, 688 S.E.2d 908, 909 (2010).

Acknowledging that he did not raise the voidness issue in this appeal before we issued our initial decision, father nevertheless contends that we have jurisdiction to consider the question because a void order can be challenged at any time. Specifically, citing to the decision of the Virginia Supreme Court in Amin v. County of Henrico, 286 Va. 231, 749 S.E.2d 169 (2013), father argues that we *must* address his voidness argument.

In Amin, the defendant was charged with and ultimately convicted of carrying a concealed weapon in violation of Henrico County Ordinance 22-2, which purportedly incorporated Code § 18.2-308, Virginia's concealed weapons statute. Amin challenged the conviction on appeal, arguing that the circuit court had erred in denying his motion to suppress. Although the Court of Appeals initially denied his appeal, a three-judge panel granted his appeal regarding his lone assignment of error: that the circuit court had erred in denying the motion to suppress. Id. at 233, 749 S.E.2d at 169.

When Amin filed his designation of appendix, he included an additional assignment of error asserting: "'That the conviction is void as a matter of law as there exists no Henrico County Ordinance 22-2 incorporating Virginia Code Section 18.2-308.'" Id. at 233, 749 S.E.2d at 170. Amin had not previously raised this argument in either the circuit court or in his appeal.

In addressing Amin's argument that his conviction was void because the Henrico County ordinance did not incorporate the Virginia concealed weapons statute, this Court recognized that "the criminal act of carrying a concealed weapon under Code § 18.2-308 is included in Title 18.2, Chapter 7, Article 7 of the Code of Virginia, and the [Henrico County] ordinance only

adopts and incorporates the provisions of Article 2 of that title and chapter . . . ." Amin v. County of Henrico, 61 Va. App. 67, 73, 733 S.E.2d 661, 664 (2012). Despite agreeing that Amin had been convicted of an offense not proscribed by the ordinance under which he was charged, we declined to hear his voidness argument, finding that he had not properly asserted the voidness argument in his assignments of error as required by Rule 5A:12(c). Id. at 73-75, 733 S.E.2d at 664-65.

The Virginia Supreme Court reversed, holding that

> an order that is void *ab initio* may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner. We also [have] held that Rule 1:1, which limits the jurisdiction of a court to twenty-one days after entry of the final order, does not apply to an order which is void *ab initio*. The reason for that remedy is that an order which is void *ab initio* is a nullity, and is without effect from the moment it comes into existence.

Amin, 286 Va. at 235-36, 749 S.E.2d at 171 (internal quotation marks and citations omitted). Continuing, the Court reasoned that, so long as a litigant has timely filed and properly perfected an appeal as to any issue, he retains the ability to raise a voidness challenge so long as the matter is pending before the appellate court. Id. at 236-37, 749 S.E.2d at 171.

Father's challenge is unlike Amin in two respects. First, father raised the voidness issue in the circuit court. Second, Amin raised his voidness challenge in this Court before this Court heard oral argument, while father waited to raise the issue in this appeal until after both argument and this Court had issued an opinion in the case. Nevertheless, the reasoning of Amin makes clear that a voidness challenge can be raised at any time that the appellate court has jurisdiction

- 9 -

over the matter.[5]  Because the mandate had not issued and father timely filed a petition for rehearing, the case remained in the breast of this Court.  Accordingly, consistent with Amin, we have jurisdiction to consider father's voidness challenge.

Mother does not, in any significant way, challenge the conclusion that Amin requires us to consider father's voidness argument.[6]  Rather, she in essence argues that the child support provision of Paragraph 4 is not void, and therefore, the argument is untimely.  Necessarily, this argument concedes that, if the provision is void *ab initio*, the issue is properly before us.  Accordingly, we turn to the question of whether Paragraph 4 is void.

### *Kelley v. Kelley*

Father's voidness argument relies on the decision of the Virginia Supreme Court in Kelley.  In Kelley, the parties entered a property settlement agreement, which was incorporated into the final divorce decree, by which the husband agreed to forego his interest in the marital home in exchange for being relieved of his child support obligation.  248 Va. at 296-97, 449 S.E.2d at 55-56.  After a number of years, a dispute arose over the custody arrangements and the support provision with Mr. Kelley seeking visitation and Mrs. Kelley seeking to have father pay child support.  Id. at 297, 449 S.E.2d at 56.  The trial court found the provision of the parties'

---

[5] The exception to this rule is that a voidness challenge is subject to the preclusive effects of *res judicata* and collateral estoppel.  Carrithers v. Harrah, 63 Va. App. 641, 648, 762 S.E.2d 402, 406 (2014).  Once a litigant has argued a voidness challenge to a final judgment on the merits, including any right of appeal, the issue has been decided and is not subject to relitigation.  See Rule 1:6; Faison v. Hudson, 243 Va. 413, 419, 417 S.E.2d 302, 305 (1992) (holding that "a judgment is not final for the purposes of *res judicata* or collateral estoppel when it is being appealed or when the time limits fixed for perfecting the appeal have not expired").  The circuit court's ruling on voidness was not a final resolution on the merits because the case was and remained subject to an appeal to this Court.  Similarly, our dismissal of the appeal in Host v. Host, Record No. 1774-14-4 (unpublished order Oct. 13, 2015) is not a final judgment on the merits because we expressly did not reach the merits and the case properly remained subject to our appellate jurisdiction because of the instant appeal.

[6] In her response to the petition for rehearing, mother does not cite Amin, but rather, argues the merits of whether Paragraph 4 is void.

- 10 -

agreement that purported to extinguish the father's obligation to provide child support to be null and void.  Id.

The husband appealed, and the issue eventually reached the Virginia Supreme Court, which found that the provision was "null and void . . . ."  Id. at 298, 449 S.E.2d at 56.  In doing so, the Court recognized that, when child support is the issue, there are limits on what the parties can do by way of agreement.  Specifically, the Court held that "parents cannot contract away their children's rights to support *nor can a court be precluded by agreement from exercising its power to decree child support.*"  Id. (emphasis added).  Finally, the Court held that because the final decree incorporated the void provision of the parties' agreement, that provision of the decree was also void, and therefore, could "be attacked and vacated in any court at any time, directly or collaterally" despite the fact that the parties had agreed to the provision and it had been in place for a number of years.  Id. at 299, 499 S.E.2d at 57.

Applying these principles to the case at bar, it is clear that Paragraph 4 is void.  Paragraph 4 provides that, regardless of circumstances, the agreed amount of child support "may not be reduced . . . ."  By its express terms, it seeks to prevent a circuit court from decreeing child support based on the specific facts and circumstances.  Accordingly, it runs afoul of Kelley's direction that the parties' agreement cannot preclude a circuit court "from exercising its power to decree child support," id. at 298, 449 S.E.2d at 56, and therefore, is void.  See also Virostko v. Virostko, 59 Va. App. 816, 824, 722 S.E.2d 678, 682 (2012) (holding that "the parties' agreement may not prevent the court from exercising its power to change, modify or enforce its decree concerning child support" (internal quotation marks and citations omitted)).

Mother raises several arguments in an attempt to save Paragraph 4.  First, she argues that she bargained for this arrangement, gave up valuable consideration in exchange for Paragraph 4, and is entitled to the benefit of her bargain.  The husband in Kelley made similar arguments;

such arguments fail because the parties, regardless of their intentions, cannot enter into agreements that divest a court of its ability to decree child support.

Next she argues that Paragraph 4 does not deprive the circuit court of its ability to "decree" child support. She asserts that, consistent with the child support guidelines, the circuit court is free to make any determination it wishes regarding the proper amount of support under the guidelines and announce that finding; however, the agreement still would require father to pay the $2,000 a month no matter what the circuit court found. This argument fundamentally misunderstands what a "decree" of a court is; it is not an idle statement but an order directing a party to do or refrain from doing something. See Decree, Black's Law Dictionary (10th ed. 2014) ("decree, *n.* (14c) 1. Traditionally, a judicial decision in a court of equity, admiralty, divorce, or probate – similar to a judgment of a court of law . . . . 2. A court's final judgment. 3. Any court order, but esp. one in a matrimonial case."). Because Paragraph 4 purports to prevent the court from ordering a change in child support, it seeks to prevent a court "from exercising its power to decree child support," and therefore, is void.

Finally, mother argues that father is seeking to avoid an agreed upward deviation from the child support guidelines and that we have allowed parties to agree to upward departures previously. It is true that agreed upward deviations from the guidelines amount accepted by a circuit court can be permissible. See Moreno v. Moreno, 24 Va. App. 227, 481 S.E.2d 482 (1997). However, such agreed upon upward deviations must still allow a circuit court the ability to address child support if there is a material change in circumstances or they run afoul of Kelley's prohibition on preventing a court "from exercising its power to decree child support." Because Paragraph 4 seeks to prevent a court from exercising this power, it is void under Kelley.

*Effect of Paragraph 4 Being Void*

As noted above, the circuit court (and this Court) made multiple rulings regarding father owing a child support arrearage, his obligation to pay attorneys' fees and costs (including the penalty provisions), and related issues. The predicate for these rulings was that Paragraph 4 was valid, and therefore, set father's child support obligation. Because of our ruling today, the basis for all of the circuit court's conclusions on these issues is called into question.

Additionally, as mother has argued, she did bargain for the void provision and apparently gave up other items of value to which she may have been entitled. Because such other provisions of the parties' agreement may be so inextricably intertwined with Paragraph 4 that they cannot be severed, a determination must be made as to what other portions of the parties' agreement are invalidated by our finding that Paragraph 4 is void.

The parties agree that, given the fact-dependent nature of some of the questions raised by Paragraph 4 being declared void, remand to the circuit court is appropriate to determine the outstanding questions. Although we are not bound by the parties' agreement on this issue, we concur. Accordingly, we remand to the circuit court for a determination, in light of our ruling that Paragraph 4 is void, of the issues raised by the parties' pleadings below; a determination whether other provisions of the parties' agreement can be severed from Paragraph 4; entry of a valid child support order; and such other actions as are necessary to carry out our decision.

*Attorneys' Fees on Appeal*

Paragraph 6 of the parties' agreement provides that "[i]n the event that [father] defaults in his obligation to pay support pursuant to this Order, [father] shall pay all costs of enforcement of this Order including, but not limited to reasonable attorney fees . . . ." Assuming without deciding that Paragraph 6 is severable from Paragraph 4 and continues in effect, we note that, given the disposition, this appeal does not fall within the provision. Accordingly, the parties'

agreement does not entitle the mother to fees related to this appeal. Furthermore, we decline to exercise our discretion to award either party attorneys' fees related to the appeal. O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

## CONCLUSION

For the foregoing reasons, we find that Paragraph 4 of the parties' agreement is void. Accordingly, we vacate our prior opinion in this matter, reverse the decision of the circuit court, and remand the case to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Monday** *the* **4th** *day of* **January, 2016**.

David L. Host, Appellant,

against        Record No. 2134-14-4 (October 21, 2014 order)
Circuit Court No. CL-2010-14830

Winfrey R. Host, Appellee.

Upon a Petition for Rehearing

Before Judges Humphreys, Russell and AtLee

On November 18, 2015 came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on November 3, 2015, and grant a rehearing thereof.

On consideration whereof, the petition for rehearing is granted, the mandate entered herein on November 3, 2015 is stayed pending the decision of the Court, and the appeal is reinstated on the docket of this Court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:    *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

Present:   Judges Humphreys, Russell and AtLee
Argued at Fredericksburg, Virginia


DAVID L. HOST

                                                      MEMORANDUM OPINION[*]  BY
v.        Record No. 2134-14-4                        JUDGE WESLEY G. RUSSELL, JR.
                                                      NOVEMBER 3, 2015
WINFREY R. HOST



FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dennis J. Smith, Judge

Peter M. Fitzner (Matthews, Snider & Fitzner, on briefs), for
appellant.

Kenneth L. Crosson for appellee.


David L. Host ("father") appeals from orders of the trial court involving the construction

and enforcement of support provisions contained in the final divorce decree.  Specifically, he

argues the circuit court erred in finding he was not entitled to a credit against his monthly

support obligations for payments that his father, James Host, made in excess of the amount of

ordered monthly child support and in its subsequent rulings regarding attorneys' fees and support

arrearages.  For the reasons that follow, we disagree and affirm.

BACKGROUND

Father and Winfrey R. Kirkpatrick f/k/a Winfrey Host ("mother") were married in 1994

and were divorced by final decree dated April 30, 2012.  Three children, all of whom remain

minors, were born of the marriage:  a son, age 17; and two daughters, ages 13 and 12,

respectively.  The court awarded custody of all three children to mother, and the parties entered

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

into an agreement relating to the children's care and maintenance, including regular periodic child support. The divorce decree states, "whereupon, the Court having considered the agreement and representations of the parties in light of the factors set forth in the Code of Virginia and other relevant factors, it is adjudged, ordered and decreed as follows . . . ."

Paragraph 4 of the final decree[1] sets father's child support obligation at $2,000 a month, an amount "calculated by agreement of the Parties as an upward deviation from the presumed [guideline] amount . . . ," with such support continuing until all three of the parties' children either die or are emancipated upon attaining the age of eighteen. In addition, "[t]he ordered child support shall not be reduced or terminated when one or more of the Parties' minor children reside with [the father, and] . . . shall not be reduced or terminated when the first or second of the Parties' minor children is/are emancipated." Paragraph 4 also states that "[c]hild support may be modified upward due to a change in circumstances but may not be reduced" and that father's obligation would be unaffected by mother's remarriage.[2] In Paragraph 5, the final decree directs that mother "shall expressly acknowledge and credit any payment she shall receive from

---

[1] The final decree contains multiple sections containing numbered paragraphs and the numbering of the paragraphs begins anew in each section. As a result, there are multiple paragraphs that have the same introductory number. For example, the order contains at least three paragraphs numbered "4." Unless otherwise indicated, a reference to a paragraph number in this opinion shall refer to the numbered paragraphs in the section of the final decree that begins with "whereupon, the Court having considered the agreement and representations of the parties in light of the factors set forth in the Code of Virginia and other relevant factors, it is adjudged, ordered and decreed as follows . . . ."

[2] In the circuit court, father alleged that this provision of the parties' marital settlement agreement and the circuit court orders adopting the agreement's provisions were void because they impermissibly limited the circuit court's ability to modify child support in violation of the rule set out in Kelley v. Kelley, 248 Va. 295, 449 S.E.2d 55 (1994). The circuit court found that the provision was not void. In another appeal to this Court, father attempted to challenge this ruling of the circuit court. We found we lacked jurisdiction to hear that appeal and dismissed it by order dated October 13, 2015. See Host v. Host, Record No. 1774-14-4 (Va. Ct. App. Oct. 13, 2015). Father did not raise the voidness issue in the instant appeal, and therefore, we do not address in detail the issue or the filings/proceedings in the circuit court that were dedicated solely to that issue here.

- 2 -

[father's] father[, James Host,] and/or stepmother toward [his] child support obligations set forth in this Order."

As part of their divorce, both parties waived spousal support and agreed to sell or refinance the marital home. In addition, Paragraph 7 provides that mother is entitled to $30,000 from father for attorneys' fees. Nevertheless, "so long as [father] is current and timely in his support payments, [he] is not required to pay any of these fees." Paragraph 8 similarly relieves father of a stipulated support arrearage of $5,826, "so long as [he] is current and timely in his child support payments[.]" In addition to these conditional waivers, the final decree, in Paragraph 6 of the order, provides that, upon default of his support payments, father "shall pay all costs of enforcement of this Order[,] including but not limited to reasonable attorney fees, costs, travel and lodging costs of [mother], sheriff or special process server, court reporter and transcript fees."

Subsequent to their divorce, the parties presented to the circuit court a consent decree, entered July 31, 2013, modifying custody by transferring to father physical custody of their son. The agreed order maintains the $2,000 payable by father as monthly child support and provides that "[t]he parties have agreed that child support shall not be affected by this agreement or modified due to [the son] relocating back to [his father's residence]." The order recites that the child support was calculated using the incomes of the parties as set forth in the final decree.

On August 13, 2013, father filed a motion in the circuit court seeking a declaratory judgment that, under Paragraph 5 of the final decree, he was entitled to a credit for certain monies given to mother by father's father (hereinafter "James Host") that were in excess of his $2,000 monthly obligation.[3] Mother demurred in response.

---

[3] Upon the filing of the motion, father unilaterally claimed a credit for the amounts in question, resulting in months in which he paid mother less than $2,000 in child support.

While the declaratory judgment action was pending, mother filed, on October 21, 2013, a motion for rule to show cause for father's alleged failure to comply with the terms of the final decree and modified custody order, including provisions related to child support, attorneys' fees, and sharing of his federal tax return. Mother specifically alleged failure to pay the full $2,000 a month and, based on his noncompliance, sought enforcement of the penalty provisions related to her conditional waiver of collection of arrearages and attorneys' fees.

A hearing was held on December 13, 2013. The court ruled that the final decree did not allow for excess payments from James Host to be credited towards another month; rather such monies were received as gifts and thus father was found to be in arrears and in violation of the support orders. The court, however, did not find the violation willful and declined to find father in contempt. This ruling was memorialized in an order entered January 31, 2014, which "ma[de] no finding or order concerning" the provisions relating to mother's collection of past arrearages and attorneys' fees, "leav[ing] those issues to be resolved by agreement of the Parties or by other proceeding in this cause." The matter remained on the court's docket.

On March 7, 2014, father filed a second motion for declaratory judgment, seeking an order directing mother to deposit support checks, seeking attorneys' fees, and a finding that mother waived any claim of collecting on the penalty provisions.

On March 13, 2014, mother filed a "Motion to Enforce Order" raising issues arising from the final decree's provisions related to the martial home, tax returns, medical costs payments, collection of the conditionally waived attorneys' fees and arrearages, and attorneys' fees associated with the ongoing litigation. On May 5, 2014, with a May 29, 2014 hearing date scheduled, mother filed another motion, entitled a "Motion for Resolution of the Remaining Issues in this Cause," claiming the issues related to attorneys' fees, application of the final decree's default provisions, and tax returns remained unresolved. Mother also sought to compel

father to sell or refinance the marital home in accord with the divorce decree. On May 27, 2014, father filed his "Response to [Mother's] 'Motion to Enforce Order' and Motion for Resolution of the Remaining Issues in this Cause."

At the May 29, 2014 hearing, the court commented on the penalty provisions, stating, "But I think those amounts, $30,000 plus $5,826, are due and payable. He did not do what he contracted to do."

On October 16, 2014, the parties returned to court for a hearing for entry of an order and to address multiple issues related to the proceedings, beginning with father's filing of his initial motion for declaratory judgment. At that time, the circuit court set an appeal bond of $39,000.

On October 21, 2014, the court entered an order, that, among other things, directed father to pay the conditionally waived $30,000 attorneys' fees and $5,826 arrearage, appointed a special commissioner for the sale of the house, denied father's motion for support, and awarded mother an additional $30,000 for attorneys' fees incurred in the litigation that began with the filing of father's declaratory judgment action in 2013. Father noted his appeal of this order on November 20, 2014.

In his appeal of the circuit court's October 21, 2014 order, father asserts four assignments of error:

> 1.      The trial court erred by misconstruing ¶5 of the parties' Final Order of Divorce by failing to consider the parties' intent as expressed in the entire Final Divorce Order; by rewriting the plain meaning of the parties' agreement; and by requiring specific "magic language" as a prerequisite for honoring the parties' contract.[4]

---

[4] Mother argues that this issue cannot be reviewed because it was decided by order dated January 31, 2014, an order father did not appeal. Even assuming father was able to appeal the order by way of an interlocutory appeal, he was not required to do so. Because the January 31, 2014 order left unresolved mother's claim for the conditional fees and support, it was not a final order.

- 5 -

2.  The trial court erred in requiring Defendant to pay $30,000 and $5,826 pursuant to ¶¶ 7 and 8 of the Final Divorce Order, as such payments are solely conditioned upon the trial court's reversible error as set forth in Assignments of Error 1 above.

3.  The trial court erred in awarding Mother $30,000 "for attorney fees relating . . . through October 15, 2014," as such attorney's fees are solely conditioned upon the trial court's reversible error as set forth in Assignments of Error 1 and 2 above.

4.  Even if this Court holds that the trial court did not otherwise commit reversible error, the trial court lacked the authority and erred in awarding Mother the attorneys' fees that she incurred after January 31, 2014.

## ANALYSIS

"Support agreements that are voluntarily made by the parties are subject to the same rules of construction applicable to contracts generally." Goldin v. Goldin, 34 Va. App. 95, 107, 538 S.E.2d 326, 332 (2000) (citing Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)).[5] "When a judgment is based upon the construction or interpretation of a contract, an appellate court is not bound by the trial court's construction of the contract's provisions." Nicholson v. Nicholson, 21 Va. App. 231, 239, 463 S.E.2d 334, 338 (1995) (internal citations omitted). Accordingly, "[t]he trial court's interpretation of [a support agreement] is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350 (2008) (*en banc*).

"'In reviewing the agreement, we must gather the intent of the parties and the meaning of the language . . . from an examination of the *entire* instrument, giving full effect to the words the parties actually used.'" Rutledge v. Rutledge, 45 Va. App. 56, 64-65, 608 S.E.2d 504, 508 (2005)

---

[5] Although Paragraph 5 is a reference to the final decree as opposed to a separate document setting forth the parties' agreement, the final decree in this case was a consent order entered as a result of an agreement between the parties. As such, we review it as if it were an agreement of the parties. Newman v. Newman, 42 Va. App. 557, 568, 593 S.E.2d 533, 539 (2004) (*en banc*) ("While a consent decree is a court order, it is contractual in its nature and should be construed as though it were a contract." (internal quotation marks and citations omitted)).

- 6 -

(quoting Layne v. Henderson, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986)). "According to the rules of construction, 'courts cannot read into contracts language which will add to or take away the meaning of words already contained therein.'" Id. at 64, 608 S.E.2d at 508 (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)).

Interpretation of Paragraph 5

At issue is the construction of Paragraph 5 of the final decree, which, pursuant to the parties' agreement, requires mother to "expressly acknowledge and credit any payment she shall receive from [James Host] toward [father's] child support obligations set forth in this Order." Per the final decree and consent order, father's child support obligations include making monthly periodic payments of $2,000 and a proportional share of both the costs of medical care over $250 and any increase in medical insurance.

The parties agree that there were several months in which mother received from James Host undesignated funds in excess of the $2,000 per month father was ordered to pay.[6] Father argues that those funds exceeding $2,000 should be credited towards his future support obligations because mother is required to credit "any payment" received from his parents as a payment towards his support obligation. Mother contends that this ignores the last clause of Paragraph 5. She contends the final clause, "toward [father's] child support obligations set forth in this Order . . . ," makes clear that father is entitled to credits only for payments by James Host up to a maximum of $2,000 a month, which is father's monthly child support obligation.

In general, "[s]upport payments made by an obligated spouse over and above court-ordered monthly support are considered gifts or gratuities." Sanford v. Sanford, 19

---

[6] Mother also received $2,300 for medical expenses of the children from James Host. The parties agree that these funds, although constituting a payment from James Host to mother, should not be credited against father's monthly support obligation, but rather, should be credited towards fulfilling father's obligations regarding the payment of medical expenses.

Va. App. 241, 248, 450 S.E.2d 185, 190 (1994) (citing <u>Fearon v. Fearon</u>, 207 Va. 927, 154

S.E.2d 165 (1967); <u>Newton v. Newton</u>, 202 Va. 515, 118 S.E.2d 656 (1961)).  As our Supreme

Court has explained,

> [I]t is the obligation of the divorced husband to pay the specified amounts according to the terms of the decree and . . . he should not be permitted to vary these terms to suit his convenience.  In such a decree the required payments are fixed according to the needs of the child or children and the ability of the husband to pay.  Should these vary, from time to time, and warrant a change in the terms of the decree favorable to the husband, his remedy is to apply to the court for such relief.  To permit him to increase the amount of the specified payments at one time, reduce them at another, and require an adjustment of the differences in the future, would lead to continuous trouble and turmoil.  It might result in a hardship to the child or children . . . .  To allow the husband credit for these overpayments would be to deprive the [children] of the future benefit of the amount of support money which the lower court has found was proper and has ordered to be paid.

<u>Newton</u>, 202 Va. at 519, 118 S.E.2d at 659.

We have recognized that divorcing parties may, by agreement, avoid these general

principles.  Specifically, we have held that parties may choose to award future credit for

overpayment of a monthly support award so long as they do so by "a *specific*, mutual agreement

. . . ." <u>Buxbaum v. Buxbaum</u>, 20 Va. App. 181, 186, 455 S.E.2d 752, 755 (1995) (emphasis

added) (distinguishing the facts of that case from <u>Acree v. Acree</u>, 2 Va. App. 151, 342 S.E.2d 68

(1986), where there had been an "unambiguous and unequivocal" agreement).  Thus, the

question before us is whether Paragraph 5 constitutes the parties' "specific, mutual agreement" to

avoid the general principles set forth in <u>Newton</u>.

Paragraph 5 does alter at least some of the default assumptions regarding child support

awards.  There is no dispute among the parties that father's child support obligations were

considered satisfied when he did not pay them so long as mother received sufficient funds from

James Host.  The language used in Paragraph 5 that mother must "expressly acknowledge and

credit" such payments is a "specific, mutual agreement" that is sufficient to extinguish father's support obligation when those payments were timely made by James Host.

The question remains whether Paragraph 5 is also a "specific, mutual agreement" to entitle father to a credit against future child support obligations for payments made by James Host to mother in excess of the amount of monthly child support specified in the final decree. For the reasons that follow, we find that the language of Paragraph 5 is insufficiently specific to avoid operation of the general rule.

Father's argument does find some support in principles of syntax and usage. In Paragraph 5, the term payment is modified by "any," suggesting that the parties intended father to receive a credit against child support for all payments mother receives from James Host, regardless of how much is received or when it is received. Furthermore, contrary to mother's assertion, the phrase "toward [father's] child support obligations set forth in this Order . . ." contained in Paragraph 5, modifies "credit" and not "payment." To read it otherwise would provide no direction as to where father was to receive the credit. Thus, linguistically, the language of Paragraph 5, considered in isolation, lends support to father's position.

As noted above, in interpreting such support provisions "we must gather the intent of the parties and the meaning of the language . . . from an examination of the *entire* instrument, giving full effect to the words the parties actually used.'" Rutledge, 45 Va. App. at 64-65, 608 S.E.2d at 508 (quoting Layne, 232 Va. at 337-38, 351 S.E.2d at 22). Thus, if the only question were whether the parties had reached "an agreement," father's position might prevail; however, to avoid the general rule that payments in excess of the monthly support are treated as gratuities, the parties must have reached a *specific* agreement.

This the parties did not do. Paragraph 5 makes no mention, specific or otherwise, of how *excess* payments by James Host would be treated. The lack of a specific direction regarding how

excess payments would be treated requires us to apply the default rule that "[s]upport payments made by an obligated spouse over and above court-ordered monthly support are considered gifts or gratuities." Sanford, 19 Va. App. at 248, 450 S.E.2d at 190 (citation omitted).

Father argues that we should conclude that the use of the modifier "any" before "payment" evinces a "specific, mutual agreement" to grant father a credit for the excess payments made by James Host. This argument fails for multiple reasons.

Although it is linguistically possible to read "any payment" as encompassing "any and all payments" made by James Host to mother, such a reading leads to absurd results. Father readily concedes that he is not entitled to a credit for any excess payments that *he* makes because the parties did not reach such an agreement. Thus, consistent with the cases cited above, father acknowledged at oral argument that he could not, on January 1 of any given year, present mother with a check for $24,000 (12 months x $2,000 per month) and extinguish his child support obligation for the year. He further acknowledged that his interpretation of the phrase "any payment" would allow him to extinguish his child support obligation for the year by taking the same $24,000 check and delivering it to James Host and having James Host then deliver the check to mother. Such a result is clearly absurd.

This is not to say that parties are barred from ever entering into marital agreements containing support provisions that lead to unusual results; under appropriate circumstances it may be possible for them to do so.[7] Our cases, however, require such agreements to be "specific" and a generic reference to "any payment" without any mention of altering the default rule for

_____

[7] We cannot state that parties always will be permitted to reach an agreement allowing unusual results regarding child support payments because some agreements reached by the parties may be void for other reasons. See Kelley, 248 Va. at 298, 449 S.E.2d at 56 (holding that parties cannot, by agreement, "contract away their children's rights to support nor . . ." preclude a court "from exercising its power to decree child support" (citation omitted)).

overpayments simply does not meet the specificity standard. To the extent that parties wish to set aside the default rule regarding overpayments, they should expressly so state.

Accordingly, we affirm the circuit court's ruling that father was not entitled to a credit for payments made by James Host in excess of father's $2,000 per month child support obligation.

<u>Payment of Past Due Attorneys' Fees and Support Arrearage</u>

At the time the final decree was entered, the parties agreed that father owed mother $30,000 for attorneys' fees and that, based on the *pendete lite* order, father owed a child and spousal support arrearage of $5,826. By agreement, adopted as part of the final decree, the parties stipulated that father did not have to pay those amounts if certain conditions were met.

Specifically, Paragraph 7 provides that father "is not required to pay any . . ." of the $30,000 for attorneys' fees "so long as [he] is current and timely in his support payments . . . ." Paragraph 7 further provides that if father ever fails to be current and timely with a support payment, "the entire [$30,000 in attorneys' fees] shall be due and payable . . . ."

Similarly, Paragraph 8 provides that father "is not required to pay" the $5,826 support arrearage "so long as [he] is current and timely in his child support payments . . . ." Paragraph 8 further provides that if father ever fails to be current and timely with a child support payment, the $5,826 support arrearage "shall be due and payable . . . ."

Consistent with its finding that father was not entitled to a credit towards his future child support obligations for overpayments made by James Host, the circuit court found that father's unilateral claiming of such a credit caused him to fail to be "current and timely" regarding his support obligations. Accordingly, consistent with the plain language of Paragraphs 7 and 8, the circuit court ordered father to pay the $30,000 in attorneys' fees and the $5,826 support arrearage.

- 11 -

In his second assignment of error, father asks us to reverse the circuit court's order that he pay the attorneys' fees and support arrearage detailed in Paragraphs 7 and 8. Father argues that because the circuit court erred in concluding that he was not entitled to take a credit for the overpayments, it also erred in concluding that he was not current with his support payments when he paid less than $2,000 a month. Thus, by its own terms, the assignment of error is predicated on father's contention that the circuit court's interpretation of Paragraph 5 constituted "reversible error." Because we find that the circuit court did not err in its interpretation of Paragraph 5, it necessarily follows that father's second assignment of error is without merit, and therefore, we affirm the circuit court's ruling regarding the past due attorneys' fees and the support arrearage.

Award of Attorneys' Fees Incurred in the Present Litigation

In addition to awarding the past due attorneys' fees referenced in Paragraph 7, the circuit court awarded wife $30,000 in additional attorneys' fees for fees incurred in the present litigation. In doing so, the circuit court relied upon Paragraph 6, which provides that "[i]n the event that [father] defaults in his obligation to pay support pursuant to this Order, [father] shall pay all costs of enforcement of this Order including, but not limited to reasonable attorney fees . . . ." Father seeks reversal of the award of the attorneys' fees incurred in the present litigation in both his third and fourth assignments of error.

Regarding his third assignment of error, father notes that an award of such fees is limited by the terms of Paragraph 6 to fees and costs incurred by mother to enforce the order if father "defaults in his obligation to pay support . . . ." Consistent with his proposed interpretation of Paragraph 5, father maintains he was never in default on his obligation to pay support, and therefore, the circuit court could not have awarded mother the attorneys' fees had it "properly ruled that Father was entitled to the $6,000 credit at issue in this litigation." Because we find

that the circuit court did not err in its interpretation of Paragraph 5, it necessarily follows that father's third assignment of error is without merit.

In his fourth assignment of error, father argues that, even if the circuit court correctly interpreted Paragraph 5, the award of attorneys' fees still exceeded the scope of Paragraph 6. Specifically, father argues that Paragraph 6's attorneys' fees provision is only triggered by father's default regarding "his obligation to pay support." He argues that because

> the trial court's January 31, 2014 order reflected that Father was current in all of his monthly child support payments, Mother was not entitled to recover attorney fees beyond that date – and as the Affidavit of Mother's counsel shows fees in the amount of $15,895 through January 31, 2014, the trial court's award of $30,000 in attorney fees to Mother was clearly in error.

However, father ignores that much of the litigation after January 31, 2014, still dealt with whether father was in default for claiming a credit. For example, all of father's arguments that he was never in default regarding his support obligations because the parties' agreement was void, see supra footnote 2, occurred after January 31, 2014. These arguments are clearly related to whether father was in default of his support obligations, and therefore, it was not error for the circuit court, pursuant to Paragraph 6, to award mother attorneys' fees for fees incurred in defending against father's attempt to have the provisions declared void.

Furthermore, father is mistaken when he argues that the support referenced in Paragraph 6 is limited to only "monthly child support" set forth in Paragraphs 4 and 5. Paragraph 6 refers to father's "obligation to pay support pursuant to this Order . . . ." Thus, it also includes father's obligations to pay support referenced in Paragraphs 7 and 8, an issue that was not finally resolved until the circuit court entered its October 21, 2014 order.

- 13 -

Although Paragraphs 7 and 8 are respectively labeled "Attorney Fees" and "Arrearages," both paragraphs explicitly characterize the payments in the event of father's default as support.[8] Paragraph 7 provides that the payment of attorneys' fees shall be considered "additional child support . . . ." Paragraph 8 of the order specifies that the arrearage represents part of father's "child support and spousal support obligation . . . ." Clearly, mother's efforts to collect these amounts constituted an effort to enforce the support provisions of the order, and thus, fall within the scope of Paragraph 6.

Based on the foregoing and the attorneys' fees affidavit provided by mother in the circuit court, we cannot say on this record that the trial court erred in awarding mother $30,000 for attorneys' fees incurred in the present litigation. Accordingly, we affirm the circuit court's award of attorneys' fees.

---

[8] In his effort to have the circuit court find that he was not in default because the underlying divorce order's support provisions were void, father expressly acknowledged that the amounts specified in Paragraphs 7 and 8 were payments of support. He argued that "while [Paragraphs 7 and 8] are titled 'Attorney Fees' and 'Arrearages,' the liquidated awards of $30,000 and $5,826 set forth therein *are explicitly defined as 'additional child support.'* These provisions clearly 'relate' to the void child support provisions, and are likewise void." Having recognized below that the amounts specified in Paragraphs 7 and 8 were support payments under the terms of the order, father cannot now argue that mother's efforts to collect those payments were not an effort to enforce father's support obligation covered by Paragraph 6's attorneys' fee provision.

- 14 -

CONCLUSION

For the foregoing reasons, we find that the circuit court did not err in its interpretation of

Paragraph 5 of the final decree and that its resulting awards of attorneys' fees and support arrearages

were consistent with the agreement of the parties. Accordingly, we affirm the decision of the circuit

court as it pertains to these issues.

Affirmed and remanded.[9]

---

[9] On brief, mother requests that we "award [her] attorney fees relating to this Appeal . . . ." Consistent with our interpretation of Paragraph 6 detailed above, we remand this matter to the circuit court to determine an appropriate award of attorneys' fees for this appeal.

Humphreys, J., concurring in the judgment.

I write separately only because, in my view, Paragraph 5 of the agreement in this case constitutes a specific mutual agreement between mother and father that *all* payments toward father's child support obligation over the court-ordered amount made by father's parents are not to be considered gifts, but rather payments towards future monthly obligations. The majority holds that because Paragraph 5 makes no specific mention of how *excess* payments by father's parents would be treated, the provision does not meet the specificity standard to override the default rule for overpayments. I respectfully disagree with my colleagues on this point.

In construing contracts "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." D.C. McClain, Inc. v. Arlington Cnty., 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995). "Words that the parties used are normally given their usual, ordinary, and popular meaning." Id. at 135, 452 S.E.2d at 662. The wording of Paragraph 5 provides that mother "shall expressly acknowledge and credit *any payment* she shall receive from [father]'s father and/or stepmother toward [father]'s child support obligation set forth in this Order." (Emphasis added). The ordinary meaning of "any" is "all" and is "used as a function word to indicate the maximum or whole of a number or quantity." Webster's Third New International Dictionary 97 (3d ed. 1993). Thus, a plain reading of the language "any payment" demonstrates the parties' intent that all payments, including *overpayments*, made by father's parents were for the purposes of child support and were not gifts.

However, although I would hold that excess payments made by father's parents are to be credited to father's child support obligations pursuant to the agreement, I nevertheless concur in the judgment of the majority because father was in clear violation of the terms of the final divorce order. While Code § 20-109.1 allows for parties to contract for future modifications in

- 16 -

child support without returning to court for approval, their ability to do so depends on the language of the agreement.

> If the modification provision is self-executing — meaning that it refers to objective standards for calculating support, such as the Child Support Guidelines or a stated formula — the parties need not obtain court approval for the modification to legally take effect. If the provision is not self-executing, the contrary is required; the parties must return to court to obtain approval of the modification.

Virostko v. Virostko, 59 Va. App. 816, 825, 722 S.E.2d 678, 683 (2012). "This distinction comports with the public policy of the Commonwealth recognizing that a trial court's review 'is necessary to ensure that the child's welfare is adequately addressed and protected given the circumstances of the parents.'" Id. (quoting Riggins v. O'Brien, 263 Va. 444, 448, 559 S.E.2d 673, 675 (2002)).

Father filed a motion for a declaratory judgment in order to receive credit for those overpayments he believed that he was due. The issue was then presented to the circuit court to decide (1) if father was entitled to any credit, and (2) what the amount of the credit should be. Paragraph 5 did not include objective language, but rather required subjective determinations about the amount father's parents had paid, when they had paid, and what remedies were available. The agreement did not and could not entitle father to simply reduce his child support obligations by an arbitrary amount without the court's permission. See, e.g., Stroud v. Stroud, 54 Va. App. 231, 239, 677 S.E.2d 629, 632 (2009).

Therefore, because father indisputably did not pay his court-ordered child support obligation, and was therefore not "current and timely in his support payments," as required by the final divorce order, I would hold that the circuit court did not err in concluding that father owed mother $30,000 in attorney's fees pursuant to Paragraph 7 and $5,826 in *pendente lite* arrearages pursuant to Paragraph 8. Furthermore, because father defaulted in his obligation to

- 17 -

pay support pursuant to the final divorce order, I would hold that the circuit court did not abuse its discretion in awarding mother reasonable attorney's fees pursuant to Paragraph 6 of the final divorce order.  Accordingly, I join my colleagues in affirming the judgment below and remanding this matter to the circuit court to determine an appropriate award of attorney's fees to mother for this appeal.